# Exhibit A to Motion

**Proposed Bidding Procedures Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UNILIFE CORPORATION, *et al.*,[1] | ) | Case No. 17-10805 (LSS) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | | Re: Docket No. ___ |

## ORDER (A) APPROVING BIDDING PROCEDURES
## AND BID PROTECTIONS IN CONNECTION WITH THE SALE
## OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) APPROVING THE
## FORM AND MANNER OF NOTICE THEREOF, (C) SCHEDULING AN AUCTION
## AND A SALE HEARING, (D) APPROVING PROCEDURES FOR THE ASSUMPTION
## AND ASSIGNMENT OF CONTRACTS, AND (E) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order (this "Order") (a) authorizing and approving the bidding procedures attached hereto as Exhibit "1" (the "Bidding Procedures") in connection with the sale of substantially all of the Debtors' assets (the "Assets"), (b) approving the form and manner of notice attached as Exhibit "2" to the Bidding Procedures Order (the "Sale Notice") of an auction (the "Auction") and sale hearing (the "Sale Hearing") with respect to the sale of the Assets free and clear of liens, claims, encumbrances, and other interests (the "Sale"), (c) scheduling the Sale Hearing, (d) approving procedures for the possible assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale (collectively, the "Contracts") and (e) authorizing the Debtors, in the exercise of their reasonable

---

[1] The Debtors in these chapter 11 cases are the following entities (the last four digits of each Debtor's respective federal tax identification number, if any, follow in parentheses): Unilife Corporation (9354), Unilife Medical Solutions, Inc. (9944), and Unilife Cross Farm LLC (3994). The Debtors' corporate headquarters and the mailing address for each Debtor is 250 Cross Farm Lane, York, PA 17406.

[2] Capitalized terms used as defined terms herein but not otherwise defined shall have the meanings ascribed to them in the Motion. In the event there is a conflict between this Order and the Motion, this Order shall control and govern.

business judgment to (i) enter into a Stalking Horse agreement (the "Stalking Horse Agreement")

if the Debtors believe that such an agreement will further the purposes of the Auction by, among

other things, enticing value-maximizing bids, and (ii) offer a Stalking Horse bidder (the

"Stalking Horse Bidder") any or all of the following (A) the Break-Up Fee (as defined below) in

an amount to be determined by the Debtors, not to exceed 3 percent of the total purchase price

offered by the Stalking Horse Bidder in the Stalking Horse Agreement, (B) the Expense

Reimbursement (as defined below) of the Stalking Horse Bidder's reasonable and actual fees and

expenses incurred as the Stalking Horse Bidder, subject to a cap of $250,000, and (C) initial

overbid protection in an amount to be determined by the Debtors, to be announced prior to the

Auction (the "Initial Overbid" and, together with the Break-Up Fee and the Expense

Reimbursement, the "Bid Protections"); this Court having jurisdiction over this matter pursuant

to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States*

*District Court for the District of Delaware*, dated February 29, 2012; this Court having found

that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); this Court having found that it

may enter a final order consistent with Article III of the United States Constitution; this Court

having found that venue of this proceeding and the Motion in this District is proper pursuant to

28 U.S.C. § 1408; this Court having found that the relief requested in the Motion is in the best

interests of the Debtors' estates, their creditors, and other parties in interest; this Court having

found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were

appropriate under the circumstances and no other notice need be provided; this Court having

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before this Court (the "Hearing"); this Court having determined that the legal and

factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted

herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, THE COURT FINDS THAT:

A.      The findings and conclusions set forth in here constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, date February 29, 2012.

C.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors have confirmed their consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by this Court in connection with this Motion, to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

D.      Venue is proper in this District and in this Court pursuant to 28 U.S.C. § 1408.

E.      The bases for the relief requested in this Motion are sections 105(a), 363, 365, 503(b), and 507(a)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy Rules 2002, 6004, and 6006(a), 9007 and 9014, and Local Rules 2002-1, 6004-1, and 9013-1(m).

F.       As evidenced by the certificates of service filed on behalf of the Debtors in these cases, notice of the Motion has been given to: (a) the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) counsel to ROS Acquisition Offshore LP ("ROS") the Debtors' prepetition and proposed postpetition secured lender; (c) Amgen, Inc., the holder of certain prepetition senior secured convertible notes; (d) First National Bank, a mortgagee of certain real property owned by Cross Farm; (e) the Commonwealth of Pennsylvania Financing Authority, the mortgagee of certain real property owned by Cross Farm; (f) counterparties to the Contracts (the "Contract Counterparties"); (g) all parties who have expressed a written interest in the Assets; (h) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (i) the Internal Revenue Service; (j) the all other applicable state and local taxing authorities; (k) all the Debtors' other creditors; (l) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (m) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

G.       The Debtors have articulated good and sufficient reasons for this Court to (a) approve the Bidding Procedures; (b) schedule the Auction and Sale Hearing and approve the manner of notice of the Auction and Sale Hearing; (c) approve procedures for the assumption and assignment of the Contracts, including notice of the proposed cure amounts; (d) authorize the Debtors to enter into a Stalking Horse Agreement and extend to a Stalking Horse Bidder the Bid Protections in the exercise of the Debtors' reasonable business judgment.

H.       The Break-Up Fee and the Expense Reimbursement: (a) shall, if triggered, be deemed an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code; (b) are commensurate to the

real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder; (c) are reasonable and appropriate, including in light of the size and nature of the proposed Sale and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed Sale is subject to better and higher offers; and (d) were necessary to induce the Stalking Horse Bidder to pursue the Sale and to be bound by the Stalking Horse Agreement.

I.    The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the value of the Assets for the benefit of the Debtors and their estates.

J.    ***Assumption and Assignment Procedures.*** The Motion, this Order, and the assumption and assignment procedures (the "Assignment Procedures") set forth herein are reasonably calculated to provide counterparties to any Contracts to be assumed by the Debtors and assigned to the Successful Bidder with proper notice of the intended assumption and assignment of their Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

K.    ***Sale Notice.*** The Sale Notice is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation: (a) the date, time, and place of the Auction (if one is held); (b) the Bidding Procedures; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) reasonably specific identification of the Assets to be sold; (e) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (collectively, "Interests"), with all such Interests attaching with the same validity and priority to the Sale proceeds; (f) notice of the proposed assumption and assignment of Contracts to the Successful Bidder. No other or further notice of the Sale shall be required.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      All objections to the relief requested in the Motion with respect to the Bidding Procedures that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

3.      The Bidding Procedures, substantially in the form attached hereto as Exhibit 1 hereto, are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to the proposed sale of the Assets. Any party desiring to bid on the asset shall comply with the Bidding Procedures in this Order. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

I.      **Break-Up Fee and Expense Reimbursement**

4.      The Debtors are authorized, subject to the reasonable exercise of their business judgment, to designate an agreement a "Stalking Horse Agreement" and enter into a Stalking Horse Agreement with the Qualified Bidder (the "Stalking Horse Bidder") prior to the Auction and to offer the Stalking Horse Bidder any or all of the following protections:

        (a)     a break-up fee (the "Break-Up Fee") in an amount to be determined by the Debtors, not to exceed 3 percent of the total purchase price offered by the Stalking Horse Bidder in the Stalking Horse Agreement; and

        (b)     reimbursement of the Stalking Horse Bidder's reasonable and actual fees and expenses incurred as the Stalking Horse Bidder up to $250,000 (the "Expense Reimbursement").

5.      The Debtors' obligation to pay the Break-Up Fee and the Expense Reimbursement shall survive the termination of the Stalking Horse Agreement and shall be payable only by the Debtors upon the closing of a Sale for the Assets with a Successful Bidder other than the Stalking Horse Bidder. The Break-Up Fee and the Expense Reimbursement shall be paid immediately upon consummation of the Sale out of the proceeds of the Sale and shall have priority as an

administrative expense in the Debtors' chapter 11 cases pursuant to section 503(b) and 507(a) of the Bankruptcy Code.

## II.    The Auction

6.    As further described in the Bidding Procedures, if a Qualified Bid, other than the Credit Bid (as defined below), is received by the Bid Deadline, the Debtors will conduct the Auction at 10:00 a.m.. (prevailing Eastern Time) on June 9, 2017, at the offices of the Debtors' proposed counsel, Cozen O'Connor, 1201 North Market Street, Suite 1001 Wilmington, Delaware 19801 or such later time on such day or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids, if a Qualified Bid is timely received.

7.    If the Debtors do not receive a Qualified Bid (other than a Credit Bid); (a) the Debtors may cancel the Auction; and (b) the Credit Bid may be deemed by the Debtors to be the Successful Bid for the Assets; and (c) the Debtors shall be authorized to seek approval of the Credit Bid as the Successful Bid at the Sale Hearing.

8.    If the Debtors receive a Qualified Bid (in addition to a Credit Bid), then the Debtors shall conduct the Auction in accordance with the Bidding Procedures.

9.    Pursuant to Local Rule 6004-1(c)(ii): (a) each bidder participating at the Auction shall be required to confirm that it is not engaged in any collusion with respect to the bidding, the Auction, or the Sale, as set forth in the Bidding Procedures; (b) the Auction shall be conducted openly; and (c) the Auction shall be transcribed or videotaped.

10.    ROS, and Amgen shall be deemed to be a Qualified Bidder and are not required to make any Good Faith Deposit. ROS and Amgen may participate in the Auction and may credit bid at any time up to the conclusion of the Auction, in its sole and absolute discretion, any portion and up to the entire amount its claims, including, without limitation, both its prepetition claims

and in the case of ROS, all obligations under the DIP Order, at any time on any individual Asset or portion of the Assets (the "Credit Bid"). Upon exercise of a Credit Bid, ROS and Amgen shall not be required to take title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), or be deemed to have taken title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), any individual Asset, portion of the Assets, or all of the Assets in which it holds a first priority lien and security interest, and ROS and Amgen shall have the right to designate any person or entity in its sole and absolute discretion that shall take title to the individual Asset, portion of the Assets, or all of the Assets that are subject to the Credit Bid.

11.     Subject to the prior paragraph, the Stalking Horse Bidder, if any, shall have the right (including as part of any Overbid) to credit bid all or a portion of its Bid Protections (if any) pursuant to section 363(k) of the Bankruptcy Code.

12.     In the event of a competing Qualified Bid, all Qualified Bidders will be entitled, but not obligated, to submit Overbids

13.     The Debtors may (a) determine which Qualified Bid (including the Credit Bid) is the highest or otherwise best offer; (b) reject at any time before the entry of the Sale Order any Bid (other than the Credit Bid) that, in the discretion of the Debtors, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interest of the Debtors' estates and their creditors; (c) at or before the conclusion of the Auction may impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interest of the Debtors' estates; and (d) prior to the entry of the Sale Order, may re-open the Auction to consider further Bids, in its reasonable business judgment.

14.     No person or entity, other than the Stalking Horse Bidder, if any, shall be entitled to any expense reimbursement, breakup fee, topping or termination fee, or other similar fee or payment, and by submitting a Bid, such person or entity is deemed to have waived its right to request or file with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

### III.     Assumption and Assignment Notices & Procedures

15.     As soon practicable, the Debtors shall serve on all non-Debtor counterparties (each a "Contract Counterparty" and, together, the "Contract Counterparties") to any Contract (the "Cure and Possible Assumption and Assignment Notice Parties") that may be assumed by the Debtors and assigned to the Successful Bidder, which notice shall be substantially in the form attached hereto as Exhibit "3" (a "Cure and Possible Assumption and Assignment Notice"), setting forth the Debtors' calculation of the cure amount, if any, that would be due and owing to such Contract Counterparty if the Debtors decided to assume or assume and assign such executory contract or unexpired lease, and alerting such Contract Counterparty that their contract may be assumed and assigned to the Successful Bidder.

16.     The presence of a Contract on the Cure and Possible Assumption and Assignment Notice does not constitute an admission that such Contract is an executory contract or unexpired lease, and the presence of a Contract on any notice shall not prevent the Debtors from subsequently withdrawing such request for assumption or rejecting such Contract any time before such Contract is actually assumed and assigned pursuant to the Sale Order.

17.     As soon as reasonably practicable after the Bid Deadline, the Debtors shall file with the Court and serve on the Cure and Possible Assumption and Assignment Notice Parties who are

parties to a Contract to be assumed and assigned a further notice substantially in the form attached

hereto as Exhibit "4" (the "Assumption Notice") identifying all Qualified Bidders, each of whom

will be permitted to participate in the Auction, stating which Contracts may be assumed and

assigned, and providing such parties with the Qualified Bidders' assurance of future performance.

18.    Any Contract Counterparty that objects to the cure amount set forth on the Cure

and Possible Assumption and Assignment Notice or the possible assignment of their executory

contract or unexpired lease must file an objection with the Bankruptcy Court (a "Contract

Objection") on or before 4:00 p.m. (prevailing Eastern Time) on the day that is fourteen (14)

calendar days after the service of the Cure and Possible Assumption and Assignment Notice, which

Contract Objection must also be served on (i) proposed counsel for the Debtors, Cozen O'Connor,

1201 North Market Street, Suite 1001 Wilmington, Delaware 19801 Attn:  Mark E. Felger

(mfelger@cozen.com) and Cozen O'Connor, 277 Park Avenue, New York, NY 10172 Attn:

Frederick E. Schmidt, Jr. (eschmidt@cozen.com); (ii) counsel to ROS, Pachulski Stang Ziehl &

Jones, 150 California Street, 15th Floor, San Francisco, CA 94111-4500, Attn:  Henry C. Kevane

(hkevane@pszjlaw.com); (iii) the Office of the United States Trustee for the District of Delaware,

J. Caleb Boggs Federal Building, 844 King Street, Ste. 2008 – Lockbox #35, Wilmington, DE

19801, Attn: Mark Kenney; and (iv) the Clerk of the Bankruptcy Court for the District of Delaware,

824 North Market Street, 3rd Floor, Wilmington, DE 19801.  If a Contract Counterparty does not

timely file and serve a Contract Objection, that party will be forever barred from objecting to (a)

the Debtors' proposed cure amount, or (b) the assignment of that party's executory contract or

unexpired lease to the Successful Bidder. Where a Contract Counterparty to an Assigned Contract

files a timely Contract Objection asserting a higher cure amount than the amount listed in the Cure

and Possible Assumption and Assignment Notice, or objecting to the possible assignment of that

Contract Counterparty's executory contract or unexpired lease, and the parties are unable to consensually resolve the dispute, the amount to be paid under section 365 of the Bankruptcy Code (if any) or, as the case may be, the Debtors' ability to assign the executory contract or unexpired lease to the Successful Bidder will be determined at the Sale Hearing.

IV.    **Notice of the Sale Process**

19.    The Sale Notice, the Cure and Possible Assumption and Assignment Notice, and the Assumption Notice, in substantially the forms as annexed to this Order as Exhibit 2, Exhibit 3, and Exhibit 4, respectively, and the Creditor Notice and Bidding Procedures Notice, in substantially the forms as annexed to the Motion as Exhibit C and Exhibit D, respectively, are hereby approved.

20.    Within two (2) business days after the entry of this Order, the Debtors (or their agents) shall serve the Sale Notice by first-class mail upon: (a) the U.S. Trustee; (b) counsel to ROS; (c) the Contract Counterparties; (d) all parties who have expressed a written interest in the Assets; (e) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (f) the Internal Revenue Service; (g) all applicable state and local taxing authorities; (h) all of the Debtors' other creditors; (i) each governmental agency, if any, that is an interested party with respect to the Sale and transactions proposed thereunder; and (j) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

21.    In addition, the Debtors are authorized, but not directed, to publish Bidding Procedures Notice in *The Wall Street Journal (International Edition)*, or such other publication that the Debtors believe appropriate.

22.    Within two (2) business days after entry of this Order, the Debtors (or their agents) shall serve the Creditor Notice on all of the parties set forth on the Debtors' creditor matrix who were not served with the Sale Notice.

### V.    The Sale Hearing

23.    The Sale Hearing will be conducted on June __, 2017 at [_____] a.m/p.m. (prevailing Eastern Time).  The Debtors will seek entry of an order of the Court at the Sale Hearing approving and authorizing the sale of the Assets to the Successful Bidder.  Upon entry of this Order, the Debtors are authorized to perform any obligation intended to be performed prior to the Sale Hearing or entry of the Sale Order with respect thereto. The Sale Hearing may be continued from time to time without further notice other than such announcement being made in open court or a notice of adjournment filed with the Court and served on the Notice Parties.

### VI.    Objections to the Sale

24.    Objections, if any, to the relief requested in the Motion relating to the Asset Sale (except for any objection that arises at the Auction) must: (a) be in writing and filed with the Court no later than 4:00 p.m. (prevailing Eastern Time) on June 5, 2017; and (b) be served so that it is actually received no later than 4:00 p.m. (prevailing Eastern Time) on June __, 2017 by on (i) proposed counsel for the Debtors, Cozen O'Connor, 1201 North Market Street, Suite 1001 Wilmington, Delaware 19801 Attn:  Mark E. Felger (mfelger@cozen.com) and Cozen O'Connor, 277 Park Avenue, New York, NY 10172 Attn:  Frederick E. Schmidt, Jr. (eschmidt@cozen.com); (ii) counsel to ROS, Pachulski Stang Ziehl & Jones, 150 California Street, 15th Floor, San Francisco, CA 94111-4500, Attn:  Henry C. Kevane (hkevane@pszjlaw.com); and (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2008 – Lockbox #35, Wilmington, DE 19801, Attn: Mark Kenney.  A party's

failure to timely file or make an objection in accordance with this Order shall forever bar the assertion of any objection to the Sale, entry of the Sale Order, and/or consummation of the Sale with the Successful Bidder pursuant to the applicable purchase agreement, including, without limitation, the assumption and assignment of the Contracts to the Successful Bidder pursuant to the applicable purchase agreement, and shall be deemed to constitute such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto, including, without limitation such assumption and assignment.

VII.   **Other Relief Granted**

25.    To the extent that any chapter 11 plan confirmed in this case or any order confirming any such plan or any other order in this case (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Order, the provisions of this Order shall control; *provided* that in the event of a conflict with any interim or final orders approving the Debtors' postpetition financing agreement and governing the Debtors' use of cash collateral, including the budget approved in connection therewith (in either case, the "DIP Order"), such interim or final DIP Order, as applicable, shall control. The Debtors' obligations under this Order, the provision of the Order and the Bidding Procedures shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon the Debtors, and the reorganized or reconstituted Debtors, as the case may, after the effective date of a confirmed plan or plans in the Debtors' cases.

26.    Nothing in this Order, the Stalking Horse Agreement (if any) or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

27.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

28.     The Debtors are hereby authorized to conduct the Asset Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

29.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

30.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Federal Rules of Bankruptcy Procedure or the Local Bankruptcy Rules to the contrary, and the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

31.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____ ___, 2017

_____
Honorable Laurie Selber Silverstein
United States Bankruptcy Judge

# Exhibit 1 to Bidding Procedures Order

## Bidding Procedures

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UNILIFE CORPORATION, *et al.*,[1] | ) | Case No. 17-10805 LSS |
| | ) | |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |
| | | Re: Docket No. ___ |

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures")[2] to be employed with respect to the proposed sale (the "Sale") of substantially all of the assets and operations of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"). It is contemplated that the Sale will be implemented through a purchase agreement, subject to the receipt of higher and better bids at an auction (the "Auction") and the corresponding entry into a sale agreement with a Successful Bidder (as defined below) according to these Bidding Procedures.

### I.    Important Dates

(All times are prevailing Eastern Time)

| Date | Time | Event Description |
|---|---|---|
| May 23, 2017 | n/a | Debtors to send Cure Notices to All Contract Counterparties and Notice of the Sale |
| June 6, 2017 | 4:00 p.m. | Cure Objection Deadline |
| June 8, 2017 | 10:00 a.m. | Deadline to submit Bid to be considered for the Auction |
| June 9, 2017 | 10:00 a.m. | Proposed date of Auction |
| June 12, 2017 | 10:00 a.m. | Debtors to file notice of Successful Bidder and Contract Assignment |
| June 6, 2017 | 4:00 p.m. | Deadline to file and serve objections to relief requested at Sale Hearing (except for any objection that arises at the Auction) |
| June 13, 2017 | [10:00 a.m.] | Proposed date of Sale Hearing |

---

[1]  The Debtors in these chapter 11 cases are the following entities (the last four digits of each Debtor's respective federal tax identification number, if any, follow in parentheses): Unilife Corporation (9354), Unilife Medical Solutions, Inc. (9944), and Unilife Cross Farm LLC (3994). The Debtors' corporate headquarters and the mailing address for each Debtor is 250 Cross Farm Lane, York, PA 17406.

[2]  Capitalized terms used as defined terms herein but not otherwise defined have the meanings ascribed to them in the Bidding Procedures Order.

II.    **Approval of Bidding Procedures**

On _____ ___, 2017, the Bankruptcy Court entered an order approving these bidding procedures (these "Bidding Procedures" and such order, the "Bidding Procedures Order"), in furtherance of the Sale.  The Bankruptcy Court has jurisdiction with respect to any dispute that may arise with respect to these Bidding Procedures.  These Bidding Procedures set forth the process (the "Bidding Process") by which the Debtors are authorized to conduct the Auction for the Sale of their Assets.

III.    **Marketing Process**

A.    **Contact Parties**

The Debtors, in consultation with SSG Capital Advisors, LLC ("SSG") and other advisors developed a list of parties who the Debtors believe may potentially be interested in and who the Debtors reasonably believe would have the financial resources to consummate a Sale, which list includes both potential strategic investors and liquidators (each, individually, a "Contact Party", and collectively, the "Contact Parties").  SSG has or will contact the Contact Parties to explore their interest in pursuing a Sale.  The Contact Parties may include parties whom the Debtors or their advisors have previously contacted regarding a Sale, regardless of whether such parties expressed any interest, at such time, in pursuing a Sale.  The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors may distribute to each Contact Party an "Information Package," which is comprised of:

(a)    a cover letter;

(b)    a copy of these Bidding Procedures; and

(c)    a copy of the confidentiality agreement attached hereto as Attachment A (the "Confidentiality Agreement").

B.    **Access to Diligence Materials**

To participate in the Bidding Process and to receive access to any materials relating to the Assets (the "Diligence Materials"), a party must submit to the Debtors an executed Confidentiality Agreement (it being understood that any person or entity that previously signed a confidentiality agreement in a form satisfactory to the Debtors shall not be required to execute a new confidentiality agreement). The executed Confidentiality Agreement must be signed and transmitted by the person or entity wishing to have access to the Debtors' data room (the "Data Room") and any other Diligence Materials.

A party who qualifies for access to the Diligence Materials shall be a "Preliminarily Interested Investor." All due diligence requests must be directed to SSG at the following address: SSG Capital Advisors, LLC, Five Tower Bridge, Suite 420, 300 Barr Harbor Drive, West Conshohocken, PA 19428, Attn:  J. Scott Victor (jsvictor@ssga.com).

For any Preliminary Interested Investor who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold any Diligence

Materials that the Debtors determine are business-sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Investor.

**C.**    *Auction Qualification Process*

To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Debtors, to satisfy each of the following conditions:

(1)    **Good Faith Deposit:** Each Bid must be accompanied by a deposit in the amount of ten percent (10%) of the Bid's proposed purchase price to a non-interest bearing escrow account to be identified and established by the Debtors (the "Good Faith Deposit").

(2)    **Terms:** A Bid must include executed transaction documents pursuant to which the Bidder proposes to effectuate the Sale, including an assets purchase agreement (the "Transaction Documents"). A Bid should propose a transaction involving substantially all, or a portion of, the Debtors' Assets or operations. The Debtors shall evaluate all Bids to determine whether such Bid(s) maximizes the value of the Debtors' estates as a whole. The Transaction Documents shall also identify any executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it pursuant to the Sale (collectively, the "Assigned Contracts"). The Debtors will consider proposals for less than substantially all of the Debtors' assets or operations. A Bid to purchase only certain assets of the Debtors shall propose a purchase price determined by such Bidder but shall be reviewed by the Debtors to determine if it is acceptable in consultation with the Consultation Parties.

(3)    **Corporate Authority:** Written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed transaction; *provided, however*, that, if the Bidder is an entity specially formed for the purpose of effectuating the transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the transaction by the equity holder(s) of such Bidder.

(4)    **Proof of Financial Ability to Perform:** Written evidence that the Debtors reasonably conclude demonstrates that the Bidder has the necessary financial ability to close the transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such transaction. Such information should include, *inter alia*, the following:

(a)    contact names and numbers for verification of financing sources;

(b)    evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the transaction;

(c)    the Bidder's current financial statements (audited if they exist); and

(d)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Bidder has the ability to close the transaction;

*provided, however*, that the Debtors shall determine, in their reasonable discretion, in consultation with the Debtors' advisors, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(5)   **Contingencies:** A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties.

(6)   **Irrevocable:** A Bid must be irrevocable through the Auction; *provided, however*, that if such Bid is accepted as the Successful Bid or the Backup Bid (as defined herein), such bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures.

(7)   **Disclaimer of Fees.** Each Bid (other than a Stalking Horse Bid, if any) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, *except* as the Debtors may agree with a Stalking Horse Bidder pursuant to the Bidding Procedures Order. By submitting its Bid, each bidder is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including pursuant to section 503(b) of the Bankruptcy Code.

(8)   **Bid Deadline:** Regardless of when a party qualifies as a Preliminarily Interested Investor, the Debtors must receive a Bid in writing, on or before June 8, 2017 **at** 10:00 a.m. (prevailing Eastern Time) or such later date as may be agreed to by the Debtors (the "Bid Deadline"). Bids must be sent to the following by the Bid Deadline to be considered: (i) proposed counsel for the Debtors, Cozen O'Connor, 1201 North Market Street, Suite 1001 Wilmington, Delaware 19801 Attn: Mark E. Felger (mfelger@cozen.com) and Cozen O'Connor, 277 Park Avenue, New York, NY 10172 Attn: Frederick E. Schmidt, Jr. (eschmidt@cozen.com); (ii) counsel to ROS, Pachulski Stang Ziehl & Jones, 150 California Street, 15th Floor, San Francisco, CA 94111-4500, Attn: Henry C. Kevane (hkevane@pszjlaw.com); and (iii) SSG Capital Advisors, LLC, Five Tower Bridge, Suite 420, 300 Barr Harbor Drive, West Conshohocken, PA 19428, Attn: J. Scott Victor (jsvictor@ssga.com).

A Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "Qualified Bid," and such Bidder shall constitute a "Qualified Bidder."

**D.    Credit Bid**

ROS Acquisition Offshore LP ("ROS") and Amgen, Inc. ("Amgen") shall each be deemed to be Qualified Bidders and are not required to make any Good Faith Deposit. ROS and Amgen may participate in the Auction and may credit bid at any time up to the conclusion of the Auction, in their sole and absolute discretion, any portion and up to the entire amount of its secured claims,

including, without limitation, its prepetition claims and in the case of ROS, all obligations under the DIP Order, at any time on any individual Asset, portion of the Assets, or all Assets constituting its Collateral (as defined in the DIP Order) in conjunction with any sale of the Debtors' Assets (the "Credit Bid"). Upon exercise of a Credit Bid, ROS shall not be required to take title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), or be deemed to have taken title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), any individual Asset, portion of the Assets, or all of the Assets, in which each holds a first priority lien or security interest and ROS and Amgen shall have the right to designate any person or entity in its sole and absolute discretion that shall take title to the individual Asset, portion of the Assets, or all of the Assets that are subject to the Credit Bid. In the event ROS and/or Amgen exercises the Credit Bid, and the amount of the Credit Bid of ROS and/or Amgen exceeds the total amount of the highest bids for the Assets subject to the Credit Bid, such Credit Bid will be deemed the highest and best bid and such Credit Bid will be accepted by the Debtors and be presented for approval to the Bankruptcy Court. ROS and/or Amgen will not be a Backup Bidder unless it consents in writing otherwise.

## IV.    Auction

If one or more Qualified Bids is received by the Bid Deadline (other than the Credit Bid), the Debtors will conduct the Auction to determine the highest and best Qualified Bid. This determination shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the estates, including, *inter alia,* the following: (a) the amount and nature of the consideration; (b) the proposed assumption of any liabilities and/or executory contracts or unexpired leases, if any; (c) the ability of the Qualified Bidder to close the proposed Transaction; (d) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (e) any purchase price adjustments; (f) the impact of the Transaction on any actual or potential litigation; and (g) the net after-tax consideration to be received by the Debtors' estates (collectively, the "Bid Assessment Criteria"). If no Qualified Bid (other than the Credit Bid) is received by the Bid Deadline, the Debtors may determine not to conduct the Auction.

The Auction shall take place at _____ a.m./p.m. (prevailing Eastern Time) on [June 9], 2017, at the offices of Debtors' proposed counsel, Cozen O'Connor, 1201 North Market Street, Suite 1001 Wilmington, Delaware 19801, or such later time on such day or other place as the Debtors shall notify all Bidders who have submitted Qualified Bids. The Auction shall be transcribed or videotaped, and shall be conducted according to the following procedures:

## A.    The Debtors Shall Conduct the Auction.

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction the Debtors shall describe the terms of the highest and best Bid(s) received, such Qualified Bid(s) (the "Auction Baseline Bid"). Depending on the Bids received prior to the Auction, the Debtors' Assets may be auctioned both in lots and for all of the Assets in bulk at the Auction to determine the highest and best Bid(s).

All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all Bidders who have submitted Qualified Bids. The Debtors shall maintain a transcript of all bids made and announced at the Auction, including the Auction Baseline Bid and all Overbids.

### B.    Terms of Overbids.

An "Overbid" is any Bid made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid.  To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(1)    **Minimum Overbid Increment.**

Any Overbid after the Auction Baseline Bid shall be made in increments of at least **$[100,000]** (the "Minimum Overbid Increment") for a bid for all of the Debtors' Assets, and in an amount to be determined by the Debtors at the Auction, for lots; *provided* that the Debtors shall retain the right to modify the bid increment requirements at the Auction.   In the event that a Stalking Horse Bidder is chosen prior to the Auction and granted a Break-Up Fee and/or Expense Reimbursement, the initial Minimum Overbid Increment shall be at least [$100,000] plus the combined amount of any Break-Up Fee and Expense Reimbursement.  Additional consideration in excess of the amount set forth in the Auction Baseline Bid may include only cash, the assumption of debt or marketable securities, or a credit bid under section 363(k) of the Bankruptcy Code of an allowed secured claim, in any combination.

(2)    **Remaining Terms are the Same as for Qualified Bids.**

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above; *provided, however*, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid.  To the extent not previously provided (which shall be determined by the Debtors), a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating such Bidder's ability to close the transaction proposed by such Overbid.

(3)    **Announcing Overbids.**

The Debtors shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtors' estate based on, *inter alia,* the Bid Assessment Criteria.

(4)    **Consideration of Overbids.**

The Debtors reserve the right, in their reasonable business judgment, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtors and individual Bidders; allow individual Bidders to consider how they wish to proceed; and give Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors in their reasonable business judgment may require, that the Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

### C.    No Collusion; Good-Faith Bona Fide Offer

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the Sale or bidding (including that it has no agreement with any other Bidder or Qualified Bidder to control the price)

and (ii) it's Qualified Bid is the good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

**D.    Backup Bidder.**

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the party with the next highest or otherwise best Qualified Bid(s) at the Auction, as determined by the Debtors, in the exercise of their business judgment, shall be required to serve as a backup bidder (the "Backup Bidder"). The Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of 5:00 p.m. (prevailing Eastern Time) on the date that is twenty (20) days after the date of the Sale Hearing (the "Outside Backup Date") or the closing of transaction with the Successful Bidder. Following entry of the Sale Order, if the Successful Bidder fails to consummate an approved transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtors may designate the Backup Bidder to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit, if any, shall be forfeited to the Debtors' estates, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder. The closing date to consummate the transaction with the Backup Bidder shall be no later than the later of twenty five (25) days after the date that the Debtors provide notice to the Backup Bidder that the Successful Bidder failed to consummate a sale and that the Debtors desire to consummate the transaction with the Backup Bidder. The deposit, if any, of the Backup Bidder shall be held by the Debtors until the earlier of two (2) business days after (a) the closing of the Sale with the Successful Bidder and (b) the Outside Backup Date; *provided, however*, that in the event the Successful Bidder does not consummate the transaction as described above and the Debtors provide notice to the Backup Bidder, the Backup Bidder's deposit shall be held until the closing of the transaction with the Backup Bidder. In the event that the Debtors fail to consummate a transaction with the backup Bidder as described above, the Backup Bidder's deposit shall be forfeited to the Debtors' estates, and the Debtors specifically reserve the right to seek all available damages from the defaulting Backup Bidder.

**E.    Additional Procedures.**

The Debtors may announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time to make subsequent Overbids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures.

**F.    Consent to Jurisdiction as Condition to Bidding.**

All Qualified Bidders, and all Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Stalking Horse Agreement, the Auction or the construction and enforcement of any Transaction Documents.

**G.    Credit Bid Rights**

ROS and/or Amgen shall have the right to Credit Bid as set forth in the Bidding Procedures Order. If there is a Stalking Horse Bidder, the Stalking Horse Bidder shall have the right (including as part of any Overbid) to credit bid all or a portion of the value of its Bid Protections (if any) for

the assets pursuant to section 363(k) of the Bankruptcy Code. Holders of "Permitted Liens" (as defined in the DIP Order, shall have the right to Credit Bid as pursuant to Section 363(k) of the Bankruptcy Code.

### H.     Closing the Auction

The Auction shall continue until there is only one or more Qualified Bid(s) that the Debtors determine in their reasonable business judgment, after consultation with its financial and legal advisors, is the highest and best Qualified Bid(s) at the Auction (the "Successful Bid" and the Bidder submitting such Successful Bid, the "Successful Bidder"). In making this decision, the Debtors, in consultation with their financial and legal advisors, shall consider the Bid Assessment Criteria. The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid and the Successful Bidder has submitted fully executed Transaction Documents memorializing the terms of the Successful Bid(s).

### I.     Break-Up Fee and Expense Reimbursement.

If the Debtors enter into a Stalking Horse Agreement and the Stalking Horse Bidder attends the Auction with its Bid in place, and the Stalking Horse Purchaser is outbid, and the Successful Bidder is a party other than Stalking Horse Bidder, the Stalking Horse Bidder shall, without further court order, be entitled to receive, to the extent set forth in the Stalking Horse Agreement: (i) a break-up fee (the "Break-Up Fee") not to exceed 3 percent of the total purchase price offered by the Stalking Horse Bidder in the Stalking Horse Agreement; and (ii) the reimbursement of the reasonable, actual, out-of-pocket costs and expenses paid or incurred by Stalking Horse Bidder directly incident to, under, or in connection with the negotiation, execution and performance under the Stalking Horse Agreement and the transactions contemplated thereunder (including travel expenses and reasonable fees and disbursements of counsel, accountants and financial advisors, excluding any charges for the time or services of the Stalking Horse Bidder's employees) in an amount not to exceed $250,000 in the aggregate (the "Expense Reimbursement"). The Break-Up Fee and Expense Reimbursement, if any, shall be paid immediately upon consummation of the Sale transaction out of the proceeds of the Sale and shall have priority as an administrative expense in the Debtors' cases under Sections 503(b)(6) and 507(a) of the Bankruptcy Code.

### V.     Procedures for Determining Cure Amounts and Adequate Assurance for Contract Counterparties to Assigned Contracts.

By [May 23], 2017, the Debtors shall send a notice to each counterparty to an executory contract or unexpired lease (each a "Contract Counterparty") setting forth the Debtors' calculation of the cure amount, if any, that would be owing to such Contract Counterparty if the Debtors decided to assume or assume and assign such executory contract or unexpired lease, and alerting such Contract Counterparty that their contract may be assumed and assigned to the Successful Bidder (the "Cure and Possible Assumption and Assignment Notice"), a copy of which is attached to the Bidding Procedures Order as Exhibit 3. **Any Contract Counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice or the possible assignment of their executory contract or unexpired lease must file an objection (a "Contract Objection") on or before 4:00 p.m. prevailing Eastern Time on [June 6], 2017,** which Contract Objection must be served on (i) proposed counsel for the Debtors, Cozen O'Connor, 1201 North Market Street, Suite 1001 Wilmington, Delaware 19801 Attn: Mark E. Felger

(mfelger@cozen.com) and Cozen O'Connor, 277 Park Avenue, New York, NY 10172 Attn: Frederick E. Schmidt, Jr. (eschmidt@cozen.com); and (ii) counsel to ROS, Pachulski Stang Ziehl & Jones, 150 California Street, 15th Floor, San Francisco, CA 94111-4500, Attn, Henry C. Kevane (hkevane@pszjlaw.com), so that it is actually received no later than 4:00 p.m. prevailing Eastern Time on June 6, 2017. If a Contract Counterparty does not timely file and serve a Contract Objection, that party will be forever barred from objecting to (a) the Debtors' proposed cure amount, or (b) the assignment of that party's executory contract or unexpired lease to the Successful Bidder. Where a Contract Counterparty to an Assigned Contract files a timely Contract Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or an objection to the possible assignment of that Contract Counterparty's executory contract or unexpired lease, and the parties are unable to consensually resolve the dispute, the amount to be paid under section 365 of the Bankruptcy Code (if any) or, as the case may be, the Debtors' ability to assign the executory contract or unexpired lease to the Successful Bidder will be determined at the Sale Hearing.

## VI.    Sale Hearing

The Bankruptcy Court has scheduled a hearing (the "Sale Hearing") on June 13, 2017, at __:__ _.m. (prevailing Eastern Time), at which hearing the Debtors will seek approval of the Sale with the Successful Bidder. **Objections to the sale of the Assets to the Successful Bidder or Back-Up Bidder must be filed and served so that they are actually received by the Debtors no later than 4:00 p.m. (prevailing Eastern Time) on [June 5], 2017** (except for any objection that arises at the Auction) on the following: (i) proposed counsel for the Debtors, Cozen O'Connor, 1201 North Market Street, Suite 1001 Wilmington, Delaware 19801 Attn:  Mark E. Felger (mfelger@cozen.com) and Cozen O'Connor, 277 Park Avenue, New York, NY 10172 Attn: Frederick E. Schmidt, Jr. (eschmidt@cozen.com); (ii) counsel to ROS, Pachulski Stang Ziehl & Jones, 150 California Street, 15th Floor, San Francisco, CA 94111-4500, Attn:  Henry C. Kevane (hkevane@pszjlaw.com); and (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2008 – Lockbox #35, Wilmington, DE 19801, Attn: Mark Kenney.

## VII.    Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders shall be held in one or more non-interest bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Court. The Good Faith Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of (i) two (2) business days after the Acquired Assets have been sold pursuant to the closing of a sale approved by the Bankruptcy Court and (ii) twenty (20) days after conclusion of the Sale Hearing. If the Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

## VIII.    Reservation of Rights

The Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment in any manner that will best promote the goals of the bidding process or impose, at or prior to the Auction, additional customer terms and conditions on the sale of the Assets,

including, without limitation: (a) extending the deadline set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing (as defined below) in open court without further notice; (c) reopening the Auction to consider further Bids or Overbids; (d) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (*e.g.*, the amount of time to make subsequent overbids, whether a non-conforming Bid constitutes a Qualified Bid); (e) canceling the Auction; and (f) rejecting any or all Bids or Qualified Bids; *provided, however*, that nothing herein modifies, nor shall be deemed consent ROS to a modification of, the 363 Sale Milestones set forth in the DIP Term Sheet or any other term, condition, provision, or milestone set forth in the DIP Order or the DIP Loan Documents.    Notwithstanding the foregoing and subject in all respects to the Stalking Horse Agreement, if any, the Debtors may not impair or modify the Stalking Horse Bidder's rights and obligations under the Stalking Horse Agreement or the Stalking Horse Bidder's right to credit bid the Bid Protections as part of any Bid at the Auction.

# Exhibit 2 to Bidding Procedures Order

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UNILIFE CORPORATION, *et al.,*[1] | ) | Case No. 17-10805 LSS |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |
| | ) | Re Docket No. ___ |

**NOTICE OF BID PROCEDURES,**
**AUCTION, HEARING AND DEADLINES RELATING**
**TO THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS**

**PLEASE TAKE NOTICE** that on April 12, 2017, Unilife Corporation, Unilife Medical Solutions, Inc., and Unilife Cross Farm, LLC, Unitract Syringe Pty Limited, and Unilife Medical Solutions Limited (collectively, the "Debtors") in the above-captioned cases (the "Bankruptcy Cases"), filed a *Motion of the Debtors for Entry of (I) an Order (A) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Approving the Form and Manner of Notice thereof, (C) Scheduling an Auction and Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts, and (E) Granting Related Relief; and (II) an Order (A) Approving the Asset Purchase Agreement Between the Debtors and the Successful Bidder, and (B) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts, and (D) Granting Related Relief* [Docket No. ___] (the "Bidding Procedures and Sale Motion").[2]

The Debtors seek to complete a sale (the "Transaction") of substantially all its assets (the "Transferred Assets") to a prevailing bidder or bidders (the "Successful Bidder") at an auction free and clear of all liens, claims, encumbrances and other interests pursuant to section 363 of the Bankruptcy Code (the "Auction").

**PLEASE TAKE FURTHER NOTICE** that, on [_____], 2017 the Bankruptcy Court entered an order [Docket No. ___] (the "Bidding Procedures Order") approving the bidding procedures set forth in the Bidding Procedures and Sale Motion (the "Bidding Procedures"), which set the key dates and times related to the sale of the Debtors' Transferred Assets under the asset purchase agreement with the Successful Bidder. **All interested bidders should carefully read the Bidding Procedures**. To the extent that there are any inconsistencies between the Bidding

---

[1] The Debtors in these chapter 11 cases are the following entities (the last four digits of each Debtor's respective federal tax identification number, if any, follow in parentheses): Unilife Corporation (9354), Unilife Medical Solutions, Inc. (9944), and Unilife Cross Farm LLC (3994). The Debtors' corporate headquarters and the mailing address for each Debtor is 250 Cross Farm Lane, York, PA 17406.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Bidding Procedures and Sale Motion.

Procedures and the summary description of its terms and conditions contained in this notice, the terms of the Bidding Procedures shall control.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures, the Debtors must receive a Qualified Bid from interested bidders in writing, on or before **[June 8, 2017] at 10:00 a.m. (prevailing Eastern Time)** or such later date as may be agreed to by the Debtors (the "Bid Deadline"). To be considered, Qualified Bids must be sent to the following at or before the Bid Deadline: (i) proposed counsel for the Debtors, Cozen O'Connor, 1201 North Market Street, Suite 1001 Wilmington, Delaware 19801 Attn: Mark E. Felger (mfelger@cozen.com) and Cozen O'Connor, 277 Park Avenue, New York, NY 10172 Attn: Frederick E. Schmidt, Jr. (eschmidt@cozen.com); (ii) counsel to ROS, Pachulski Stang Ziehl & Jones, 150 California Street, 15th Floor, San Francisco, CA 94111-4500, Attn: Henry C. Kevane (hkevane@pszjlaw.com); and (iii) SSG Capital Advisors, LLC, Five Tower Bridge, Suite 420, 300 Barr Harbor Drive, West Conshohocken, PA 19428, Attn: J. Scott Victor (jsvictor@ssga.com).

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures, if the Debtors receive one or more Qualified Bids (other than the Credit Bid) by the Bid Deadline, the Auction will be conducted on **[June 9] at [10:00 a.m.]** (prevailing Eastern Time) at the offices of Debtors' proposed counsel, Cozen O'Connor, 1201 North Market Street, Suite 1001 Wilmington, Delaware 19801, or at such other place, date and time as may be designated by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures, the Debtors have designated certain Assigned Contracts that may be assumed and assumed and assigned to the Successful Bidder. By [May 15], 2017, the Debtors shall send a notice to each counterparty to an Assigned Contract setting forth the Debtors' calculation of the cure amount, if any, that would be owing to such counterparty if the Debtors decided to assume or assume and assign such Assigned Contract, and alerting such non-debtor party that their contract may be assumed and assigned to the Successful Bidder (the "Cure and Possible Assumption and Assignment Notice").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures, any counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice or the possible assignment of their Assigned Contract(s) must file with the Bankruptcy Court and serve an objection (a "Cure or Assignment Objection") so that it is actually received on or before **4:00 p.m. prevailing Eastern Time on [May 31], 2017,** by (i) proposed counsel for the Debtors, Cozen O'Connor, 1201 North Market Street, Suite 1001 Wilmington, Delaware 19801 Attn: Mark E. Felger (mfelger@cozen.com) and Cozen O'Connor, 277 Park Avenue, New York, NY 10172 Attn: Frederick E. Schmidt, Jr. (eschmidt@cozen.com); (ii) counsel to ROS, Pachulski Stang Ziehl & Jones, 150 California Street, 15th Floor, San Francisco, CA 94111-4500, Attn: Henry C. Kevane (hkevane@pszjlaw.com); (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2008 – Lockbox #35, Wilmington, DE 19801, Attn: _____; and (iv) the Clerk of the Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, DE 19801. Where a counterparty to an Assigned Contract files a timely Cure or Assignment Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or an objection to the possible assignment of that counterparty's Assigned Contract, and the parties are unable to consensually resolve the dispute,

the amount to be paid under section 365 of the Bankruptcy Code (if any) or, as the case may be, the Debtors' ability to assign the Assigned Contract to the Successful Bidder will be determined at the Sale Hearing (as defined below).

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Transferred Assets to the Successful Bidder (the "Sale Hearing") before the Honorable [____], U.S. Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, 6th Floor, Courtroom [__], on **[June 12], 2017 at [_____] a.m./p.m.** (prevailing Eastern Time), or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or on the agenda for such Sale Hearing. Objections to the sale of the Transferred Assets to the Successful Bidder must be filed and served so that they are received no later than 4:00 p.m. (prevailing Eastern Time) on **[June 5, 2017]** by (i) proposed counsel for the Debtors, Cozen O'Connor, 1201 North Market Street, Suite 1001 Wilmington, Delaware 19801 Attn: Mark E. Felger (mfelger@cozen.com) and Cozen O'Connor, 277 Park Avenue, New York, NY 10172 Attn: Frederick E. Schmidt, Jr. (eschmidt@cozen.com); (ii) counsel to ROS, Pachulski Stang Ziehl & Jones, 150 California Street, 15th Floor, San Francisco, CA 94111-4500, Attn: Henry C. Kevane (hkevane@pszjlaw.com); (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2008 – Lockbox #35, Wilmington, DE 19801, Attn: _____; and (iv) the Clerk of the Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, DE 19801.

**PLEASE TAKE FURTHER NOTICE** that the Debtors are seeking to waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d) in order for the Sale to close immediately upon entry of the Sale Order by this Court.

**PLEASE TAKE FURTHER NOTICE** that this notice is subject to the full terms and conditions of the Bidding Procedures and Sale Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. A copy of the Bidding Procedures and Sale Motion, the Bidding Procedures and the Bidding Procedures Order may be obtained (i) by contacting proposed counsel for the Debtors, Cozen O'Connor, 1201 North Market Street, Suite 1001 Wilmington, Delaware 19801 Attn: Mark E. Felger (mfelger@cozen.com) and Cozen O'Connor, 277 Park Avenue, New York, NY 10172 Attn: Frederick E. Schmidt, Jr. (eschmidt@cozen.com), or (ii) for a fee via PACER at http://www.deb.uscourts.gov.

Dated: [_____], 2017

COZEN O'CONNOR                          COZEN O'CONNOR
Mark E. Felger                          Frederick E. Schmidt, Jr.
Keith Kleinman                          377 Park Avenue
1201 North Market Street, Ste 1001      New York, NY 10172
Wilmington, DE 19801                    Telephone: (212) 883-4948
Telephone: (302) 295-2087               Fax: (646) 588-1552
Fax: (302) 295-2013                     eschmidt@cozen.com
mfelger@cozen.com                       PROPOSED COUNSEL FOR THE DEBTORS
kkleinman@cozen.com
PROPOSED COUNSEL FOR THE DEBTORS

# Exhibit 3 to Bidding Procedures Order

### Cure and Possible Assumption and Assignment Notice

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **UNILIFE CORPORATION**, *et al.*, | : | |
| | : | **Case No. [          ]** |
| Debtors.[1] | : | **Joint Administration Requested** |
| | : | |
| | : | **Re Docket No. ____** |

**NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMMED
EXECUTORY CONTRACTS AND UNEXPIRED LEASES REGARDING CURE
AMOUNTS AND POSSIBLE ASSIGNMENT TO SUCCESSFUL BIDDER AT AUCTION**

PLEASE TAKE NOTICE that on April 12, 2017, 2017, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a motion (the "Bidding Procedures and Sale Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that on _____, 2017, the Bankruptcy Court entered an order [Docket No. _____ ] (the "Bidding Procedures Order") approving Bidding Procedures (the "Bidding Procedures"), which set key dates, times and procedures related to the sale of substantially of the Debtors' assets (the "Acquired Assets"). To the extent that there are any inconsistencies between the Bidding Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bidding Procedures shall control.

YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE LISTED BELOW WITH ONE OR MORE OF THE DEBTORS:[2]

[Counterparty Name]          [Contract/Lease]          Cure Amount

**Pursuant to the Bidding Procedures, the Debtors may assume the Executory Contract(s) or Unexpired Lease(s) listed above to which you are a counterparty. Also pursuant to the Bidding Procedures, the Debtors may assign the Executory Contract(s) or Unexpired Lease(s) to the successful bidder (the "Successful Bidder") at an auction of substantially all of the Debtors' assets currently scheduled for [June 9], 2017.** The Debtors have conducted a review of their books and records and have determined that the cure amount for

---

[1] The Debtors in these chapter 11 cases are: Unilife Corporation ("Unilife"), Unilife Medical Solutions, Inc. ("UMSI"), Unilife Cross Farm, LLC ("Cross Farm"), Unitract Syringe Pty Limited ("Unitract Syringe"), and Unilife Medical Solutions Limited ("UMSL").          ].

[2] This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases. This Notice is not an admission by the Debtors that such contract or lease is executory or unexpired.

unpaid monetary obligations under such contract or lease is $**[AMOUNT]** (the "Cure Amount"). If you (a) object to the proposed assumption or disagree with the proposed Cure Amount, or (b) object to the possible assignment of such Executory Contract(s) or Unexpired Lease(s) to the Successful Bidder, **you must file an objection with the Bankruptcy Court no later than [May 31], 2017**, (the "Objection Deadline") and serve such objection on the following parties: (i) proposed counsel for the Debtors, Cozen O'Connor, 1201 North Market Street, Suite 1001 Wilmington, Delaware 19801 Attn: Mark E. Felger (mfelger@cozen.com) and Cozen O'Connor, 277 Park Avenue, New York, NY 10172 Attn: Frederick E. Schmidt, Jr. (eschmidt@cozen.com); (ii) counsel to ROS, Pachulski Stang Ziehl & Jones, 150 California Street, 15th Floor, San Francisco, CA 94111-4500, Attn: Henry C. Kevane (hkevane@pszjlaw.com); (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2008 – Lockbox #35, Wilmington, DE 19801, Attn: _____; and (iv) the Clerk of the Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, DE 19801.

If no objection to the Cure Amount or the assignment of your Executory Contract(s) or Unexpired Lease(s) to the Successful Bidder is filed by the Objection Deadline, **you will be deemed to have stipulated that the Cure Amount as determined by the Debtors and set forth above is correct and you shall be forever barred, estopped and enjoined from (a) asserting any additional cure amount under the above-listed Executory Contract(s) and Unexpired Lease(s) or (b) objecting to the assumption and assignment of the above-listed Executory Contract(s) and Unexpired Lease(s) to the Successful Bidder.**

# Exhibit 4 to Bidding Procedures Order

**Assumption Notice**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **UNILIFE CORPORATION**, *et al.*, | : | |
| | : | **Case No. [          ]** |
| Debtors.[1] | : | **Joint Administration Requested** |
| | : | |
| | : | **Re Docket No. ____** |

## NOTICE OF PROPOSED ASSIGNMENT
## OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

      **PLEASE TAKE NOTICE** that on _____ ___, 2017, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and also filed a motion (the "Sale Motion")[2] to sell substantially all of their assets (the "Assets") free and clear of all liens, claims, encumbrances, and other interests (the "Sale") and assume and assign certain of their executory contracts and unexpired leases (collectively, the "Contracts") to the purchaser of the Assets.[3]

      **PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of the Assets of the Debtors consistent with the bidding procedures (the "Bidding Procedures") approved by the Court by the entry of an order on _____ ___, 2017 (the "Bidding Procedures Order").[4] The Bidding Procedures include, among other things, procedures for the assumption and assignment of the Contracts (the "Assumption Procedures").

---

[1] The Debtors in these chapter 11 cases are: Unilife Corporation ("Unilife"), Unilife Medical Solutions, Inc. ("UMSI"), Unilife Cross Farm, LLC ("Cross Farm"), Unitract Syringe Pty Limited ("Unitract Syringe"), and Unilife Medical Solutions Limited ("UMSL").                     ].

[2] *Motion of the Debtors for Entry of (I) an Order (A) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Approving the Form and Manner of Notice thereof, (C) Scheduling an Auction and Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts, and (E) Granting Related Relief; and (II) an Order (A) Approving the Asset Purchase Agreement Between the Debtors and the Successful Bidder, and (B) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts, and (D) Granting Related Relief* [Docket No. ___]

[3] Capitalized terms used as defined terms but not defined herein shall have all the meanings ascribed to them in the Sale Motion.

[4] 4 *Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Approving the Form and Manner of Notice Thereof, (C) Scheduling an Auction and a Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts, and (E) Granted Related Relief* [Docket No. ___].

**PLEASE TAKE FURTHER NOTICE** that, accordingly, pursuant to the Assumption Procedures, and by this written notice, the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that the Contracts and any modifications thereto set forth on **Schedule 1** attached hereto (collectively, the "Assigned Contracts") shall be assumed and assigned to the Successful Bidder, subject to the Successful Bidder's payment of the cure amount set forth on **Schedule 1**, or such other cure amounts as are agreed by the parties.

**PLEASE TAKE FURTHER NOTICE** that the Successful Bidder has the right under certain circumstances to designate additional Contracts as Assigned Contracts or remove certain Contracts from the list of Assigned Contracts prior to closing.

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, the Bidding Procedures, and the Bidding Procedures Order, as well as all related exhibits, including the proposed Sale Order, may be obtained (i) by contacting proposed counsel for the Debtors, Cozen O'Connor, 1201 North Market Street, Suite 1001 Wilmington, Delaware 19801 Attn: Mark E. Felger (mfelger@cozen.com) and Cozen O'Connor, 277 Park Avenue, New York, NY 10172 Attn: Frederick E. Schmidt, Jr. (eschmidt@cozen.com), or (ii) for a fee via PACER at http://www.deb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise provided by the Bidding Procedures order, the time for filing objections to (a) the cure amounts related to the Assigned Contracts, (b) the Debtors' ability to assume and assign the Assigned Contracts, and (c) adequate assurance of future performance of the Assigned Contract by the Successful Bidder has passed and no further notice or action is necessary with respect to such matters.

Dated: Wilmington, Delaware
[_____], 2017

COZEN O'CONNOR
Mark E. Felger
Keith Kleinman
1201 North Market Street, Ste 1001
Wilmington, DE 19801
Telephone: (302) 295-2087
Fax: (302) 295-2013
mfelger@cozen.com
kkleinman@cozen.com
PROPOSED COUNSEL FOR THE DEBTORS

COZEN O'CONNOR
Frederick E. Schmidt, Jr.
377 Park Avenue
New York, NY 10172
Telephone: (212) 883-4948
Fax: (646) 588-1552
eschmidt@cozen.com
PROPOSED COUNSEL FOR THE DEBTORS

# Schedule 1 to Assumption Notice

### Assigned Contracts[1]

| Counterparty | Description of Assigned Contracts or Leases | Cure Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

---

[1] The presence of a contract or lease on this **Schedule 1** does not constitute and admission by the Debtors that such contract is an executory contract or such lease in an unexpired lease pursuant to section 365 of the Bankruptcy Code or any other applicable law, and the Debtors reserve all rights to withdraw any proposed assumption and assignment or to reject any contract or lease at any time before such contract or lease assumed and assigned pursuant to an order of the Court.