the Committee (the "Retained Professionals") for each such month (the "Budgeted Professional Expenses"). Neither the DIP Lender nor the Existing Lender shall have any responsibility, liability or obligation whatsoever to ensure that the Debtors fund the Account or that the Account has funds equal to the aggregate amount of Budgeted Professional Expenses for any applicable period. The Debtors are only authorized and directed to fund the Account up to, but not to exceed, the amount of Budgeted Professional Expenses set forth in the Budget for any month. Such funds shall be held for the benefit of the Retained Professionals, to be applied to the fees and expenses of the Retained Professionals that are approved for payment pursuant to one or more orders of this Court. Any fees and expenses payable to the Retained Professionals shall be paid first out of the Account, and all amounts deposited in the Account shall reduce, on a dollar-for-dollar basis, the Carve-Out. Any excess amounts in the Account after payment of the fees of the professional persons shall be distributed to the DIP Lender or the Existing Lender, if the DIP Loans are no longer outstanding. The funds in the Account shall remain DIP Collateral and Prepetition Collateral unless and until such funds are paid to the Retained Professionals.

        12.     Restrictions on Use of Funds.

        (a)     Notwithstanding anything to the contrary in this Interim Order or in the DIP Loan Documents, no loan proceeds under the Postpetition Financing Arrangement, no DIP Collateral or Prepetition Collateral (including, without limitation, Cash Collateral), and no portion of the Carve-Out may be used to pay any fees or expenses or claims for services rendered by any of the professionals retained by the Debtors, by any Creditors' Committee, by any

DE Doc #213130v2

FINAL (4-11-17) 65099/004

creditor or other party in interest, by any other committee, by any trustee appointed in any of these Chapter 11 Cases or in any Successor Cases, or for any other party to (i) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from the DIP Lender in accordance with the DIP Loan Documents; or (ii) investigate (except as set forth in paragraph 12(b) below), assert, join, commence, support, or prosecute any action or claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter or adversary proceeding seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, the Secured Parties, or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, or action, including, without limitation, (A) any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (B) any action relating to any act, omission, or aspect of the relationship between any of the Secured Parties, on the one hand, and the Debtors or any of their affiliates, on the other; (C) any action with respect to the validity and extent of the DIP Loan Obligations or the Prepetition Obligations, or the validity, extent, and priority of the DIP Liens, the Prepetition Liens, or the Replacement Liens; (D) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Liens, the Prepetition Liens, or the Replacement Liens; (E) any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the Secured Parties in respect of their liens and security interests in the Collateral, Cash Collateral or the Prepetition Collateral, except to

contest the occurrence or continuance of any Event of Default; (F) pay any claim of a creditor (as

such terms are defined in the Bankruptcy Code) without the prior written consent of the DIP

Lender and the Existing Lender except as set forth in the Approved Budget; or (G) ~~pay any fees~~

~~or similar amounts to any person who has proposed or may propose to purchase interests in any~~

~~of the Debtors without the prior written consent of the DIP Lender and the Existing Lender; or~~

(H) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral or

Prepetition Collateral, unless otherwise expressly permitted hereby, without the express written

consent of the DIP Lender and the Existing Lender, each in their sole and absolute discretion.

(b)    Notwithstanding the foregoing, up to $25,000 in the aggregate of the

Carve-Out, any DIP Collateral, any Prepetition Collateral, any Cash Collateral, or loan proceeds

under the DIP Facility may be used by the Creditors' Committee (to the extent such committee is

appointed) to investigate (but not prosecute) the extent, validity, and priority of the Prepetition

Obligations, the Prepetition Liens, or any other claims against the Existing Lender, so long as

such investigation occurs within the Challenge Period (as defined below).

13.    <u>Reservation of Certain Third-Party Rights and Bar of Challenges and Claims</u>.

(a)    The Debtors' acknowledgements and stipulations set forth in Paragraph D

above and the releases set forth in paragraph 14 below (the "<u>Debtors' Stipulations</u>") shall be final

and binding upon the Debtors in all circumstances upon entry of this Interim Order.    The

Debtors' Stipulations shall be binding upon each other party in interest, including the Creditors'

Committee, if any, unless a Challenge (defined below) is commenced within the Challenge

~~DE Doc #213130v2~~

~~FINAL (4-11-17) 65099/004~~

Period (defined below) and a final, non-appealable order is entered sustaining any such Challenge.

(b)    "Challenge" and "Challenges" shall mean individually or collectively:  (i) an adversary proceeding or contested matter against the Existing Lender challenging the admissions, stipulations, findings, or releases included in the Debtors' Stipulations or (ii) an adversary proceeding or contested matter against the Existing Lender in connection with or related to (A) the Existing Credit Facility; (B) the prepetition business relationship between or conduct of the Existing Lender with the Debtors; (C) alleged actions or inactions of the Existing Lender arising out of or related to the Prepetition Obligations or otherwise, including, without limitation, any claim against the Existing Lender in the nature of an "equitable subordination," "lender liability," "deepening insolvency," or "control person" liability; (D) any avoidance, offset, recoupment, counterclaim, or defense to the Prepetition Obligations (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code), or (E) any avoidance of or challenge (whether pursuant to chapter 5 of the Bankruptcy Code or otherwise) to any transfer made by or on behalf of the Debtors to or for the benefit of the Existing Lender.

(c)    Any Challenge under this paragraph must be commenced by the later of (i) the sixtieth (60th) calendar day after the formation of any Creditors' Committee and (ii) the seventy-fifth (75th) calendar day following the date of entry of this Interim Order (the "Challenge Period.")

(d)      The "Challenge Period Termination Date" shall be (i) if no Challenge is filed during the Challenge Period, the next calendar day after the termination of the Challenge Period or (ii) if a Challenge is filed during the Challenge Period, the date that is one day after any Challenge is fully and finally adjudicated.

(e)      ~~Upon~~ Except as may otherwise be fully and finally adjudicated in a timely Challenge, upon the Challenge Period Termination Date and for all purposes in these Cases and any Successor Cases, (i) all payments made to or for the benefit of the Secured Parties pursuant to, or otherwise authorized by, this Interim Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, offset, recoupment, subordination, recharacterization, defense, or avoidance; (ii) any and all Challenges by any party in interest shall be deemed to be forever released, waived, and barred; (iii) the Prepetition Obligations shall be deemed to be secured by a valid, enforceable, duly perfected, and non-avoidable security interest and lien in the Prepetition Collateral; (iv) the Prepetition Obligations shall be deemed to be a fully allowed claim; and (v) the Debtors' Stipulations shall be binding on all parties in interest, including any Creditors' Committee or any trustee or trustees appointed in these Chapter 11 Cases or any Successor Cases.

(f)      For the avoidance of doubt, if a Chapter 11 trustee is appointed or the Chapter 11 Case is converted to Chapter 7 prior to the expiration of the Challenge Period, the Chapter 11 trustee or Chapter 7 trustee, as applicable (and in either instance, the "trustee"), shall have until the later of (1) the expiration of the Challenge Period or (2) the tenth (10th) day (or

first business day thereafter if the tenth day is a Saturday, Sunday or legal holiday) after the appointment of the Chapter 11 trustee or the conversion of the Chapter 11 Case to Chapter 7, as applicable, to commence a Challenge, subject to any further extension by order of the Court. If any party in interest (including a Creditors' Committee) has commenced a Challenge prior to appointment of a Chapter 11 trustee or conversion of the Chapter 11 Case to Chapter 7, the trustee shall be entitled to elect to be substituted as the plaintiff or moving party and assume control of the Challenge. Whether the trustee commences a Challenge or assumes control of an existing Challenge, the trustee shall not, for the purpose of such Challenge, be bound by the Debtors' stipulations, acknowledgments, admissions, confirmations, releases, and waivers in this Order.

14.    Release.    The release, discharge, waivers, settlements, compromises, and agreements set forth in this paragraph 14 shall be deemed effective upon entry of this Interim Order and subject only to the rights set forth in paragraph 13 above. The Debtors forever and irrevocably (i) release, discharge, and acquit the Existing Lender, and each of its respective former or current officers, employees, directors, affiliates, agents, representatives, owners, members, partners, financial advisors, legal advisors, managers, consultants, accountants, attorneys, and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, relating to any aspect of the relationship between the Existing Lender or its affiliates, on the one hand, and the Debtors or their affiliates, on the other hand

arising out of or relating to the Existing Credit Facility, including any equitable subordination claims or defenses, with respect to or relating to the Prepetition Obligations or the Existing Credit Facility, the Debtors' attempts to restructure the Prepetition Obligations, any and all claims and causes of action arising under title 11 of the United States Code, and any and all claims regarding the validity, priority, perfection, or avoidability of the liens or secured claims of the Existing Lender; and (ii) waive any and all defenses (including, without limitation, offsets, recoupments, and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and non-avoidability of the Prepetition Obligations and the Prepetition Liens.

## TERMINATION; REMEDIES; MODIFICATION OF AUTOMATIC STAY

15.  Termination.  The DIP Facility shall mature, and all unpaid principal, interest, fees, costs, expenses, and other DIP Loan Obligations shall be immediately due and payable, on the earliest to occur of (a) July 15, 2017 (the "Outside Date"), (b) 35 days after the Petition Date if the Final Order has not been entered by that date, (c) the closing date of any sale of substantially all of the assets of the Debtors' estates, (d) acceleration of the DIP Loan Obligations due to the occurrence of an Event of Default (subject to any right to cure, if such Event of Default provides for a cure and is capable of cure), (e) the appointment of a chapter 11 trustee or an examiner with expanded powers in any of the Chapter 11 Cases, (f) the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (g) the dismissal of any of the Chapter 11 Cases, (h) the effective date of any plan of reorganization in

any of the Chapter 11 Cases that has been confirmed by an order of the Court, and (i) repayment in full of the DIP Facility and the termination of the commitments thereunder.  The date on which the earliest of clauses (a) through (i) occurs is referred to as the "Termination Date."  On the Termination Date, the DIP Facility shall be deemed terminated and the DIP Lender shall have no further obligation to provide financing pursuant to the DIP Facility, the Interim Order, any Final Order, or any DIP Loan Documents, other than in respect of the Carve-Out, if necessary.  All unpaid principal, interest, fees, costs, and expenses under the DIP Facility shall be due and payable in full on the Termination Date.  Any confirmation order entered in the Chapter 11 Cases shall not discharge or otherwise affect in any way any of the joint and several obligations of the Obligors under the DIP Facility, the Interim Order, any Final Order, or the DIP Loan Documents.

16.     Remedies and Stay Modification.

(a)     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified without the need for further Court order to permit the Secured Parties, as applicable, immediately upon the occurrence of an Event of Default, and without any interference from the Debtors or any other party interest, to permit (i) either of the Secured Parties to immediately terminate the use of any Cash Collateral (including the proceeds of any advances that are deposited in the DIP Facility Funding Account (as defined below) pursuant to the DIP Term Sheet) by giving written notice of such termination to the Debtors or other

representative of the Debtors' estates and to counsel to Amgen, and (ii) the DIP Lender to terminate the DIP Facility as to any further advances and all commitments thereunder.

(b)     Subject to paragraph 16(d) below, on the fifth (5th) business day following the delivery by the Secured Parties of written notice (which shall be delivered by electronic mail) (the "Remedies Notice Period") to the Debtors, their counsel, counsel to any Creditors' Committee, counsel to Amgen, and counsel to the U.S. Trustee, the automatic stay provisions of section 362 of the Bankruptcy Code shall be deemed, and are hereby, vacated and modified to permit the Secured Parties to exercise all rights and remedies provided for in the DIP Loan Documents, this Interim Order, the Existing Loan Documents, or under other applicable bankruptcy and nonbankruptcy law including, without limitation, the right to (i) terminate the commitments under the DIP Loan Documents (if not previously terminated); (ii) declare all DIP Loan Obligations immediately due and payable (if not already due and payable); (iii) take any actions reasonably calculated to preserve or safeguard the DIP Collateral and/or the Prepetition Collateral and/or to prepare the DIP Collateral and/or the Prepetition Collateral for sale; (iv) foreclose or otherwise enforce the DIP Liens, the Prepetition Liens and the Replacement Liens on any or all of the DIP Collateral and/or the Prepetition Collateral; and (v) exercise any other default-related rights and remedies under the DIP Loan Documents or the Orders or applicable law.

(c)     Immediately upon the occurrence of an ongoing and uncured Event of Default or a default by any of the Debtors of any of their obligations under this Interim Order,

the DIP Lender may charge interest at the default rate set forth in the DIP Term Sheet, whether or not any Remedies Notice Period has commenced or expired.

(d)     Prior to the expiration of any Remedies Notice Period pursuant to paragraph 16(b) above, the Debtors, the Creditors' Committee, if any, Amgen, and/or the U.S. Trustee may seek an order from this Court to reimpose or continue, following the expiration of any Remedies Notice Period, the automatic stay of section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief, and shall have the burden of proof at any hearing on any such request.

(e)     If either the DIP Lender or the Existing Lender is entitled, and has elected in accordance with the provisions hereof, to enforce its respective liens and security interests or exercise any other default-related remedies following expiration of the Remedies Notice Period, the Debtors (or any trustee appointed under chapter 11 or chapter 7) shall cooperate with the Secured Parties (as applicable) in connection with such enforcement by, among other things, (i) providing at all reasonable times access to the Debtors' premises to representatives or agents of the Secured Parties (including any collateral liquidator or consultant), (ii) providing the Secured Parties and their representatives or agents, at all reasonable times access to the Debtors' books and records and any information or documents requested by the Secured Parties or their respective representatives, (iii) performing all other obligations set forth in the DIP Loan Documents and the Existing Loan Documents, and (iv) taking reasonable steps to safeguard and

DE Doc #213130v2

FINAL (4-11-17) 65099/004

protect the DIP Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the Secured Parties' enforcement of rights.

(f)    Following the expiration of the Remedies Notice Period, unless otherwise ordered by the Court, the DIP Lender and the Existing Lender may at all times exercise collection rights and sweep cash as provided in the Existing Loan Documents, the DIP Loan Documents, or applicable law.    The DIP Lender may immediately apply any funds then on deposit in the post-petition debtor-in-possession deposit account utilized for advances by the DIP Lender (the "DIP Facility Funding Account").    The DIP Facility Funding Account shall be deemed, pursuant to this Order, duly perfected and subject to the "control" of the DIP Lender (as that term is defined under the Uniform Commercial Code as enacted in the state of the depositary bank's jurisdiction).

(g)    This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order, including matters relating to the application, reimposition, or continuation of the automatic stay of section 362(a) of the Bankruptcy Code or other injunctive relief requested.

**MISCELLANEOUS**

17.    Limitation on Section 506(c) Claims.    Effective upon entry of the Final Order, no costs or expenses of administration that have been or may be incurred in these Chapter 11 Cases or any Successor Cases at any time shall be surcharged against, and no person may seek to

surcharge any costs or expenses of administration against, the Secured Parties or any of their respective claims, the Carve-Out, the DIP Collateral, or the Prepetition Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent, as applicable, of the Secured Parties. No action, inaction, or acquiescence by the Secured Parties shall be deemed to be, or shall be considered evidence of, any alleged consent to a surcharge against the Secured Parties, any of their respective claims, the Carve-Out, the DIP Collateral, or the Prepetition Collateral.

18.    No Marshaling. ~~The~~ Effective upon entry of the Final Order, the Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, or otherwise. Without limiting the generality of the immediately preceding sentence, no party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral after an Event of Default.

19.    Equities-of-the-Case Waiver. The Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code. Effective upon entry of the Final Order, no person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the Secured Parties with respect to any proceeds, product, offspring, or profits of any of the DIP Collateral or the Prepetition Collateral, or otherwise.

20.    No Internal Conflicts. Nothing in this Interim Order shall be construed to effectuate a waiver of (i) a surcharge claim under section 506(c) of the Bankruptcy Code, or (ii)

an "equities of the case" claim under section 552(b) of the Bankruptcy Code, each of which is reserved until entry of a Final Order pursuant to paragraphs 17 and 19 of this Interim Order.

21. 20.Additional Perfection Measures.

The DIP Liens and the Replacement Liens shall be perfected by operation of law immediately upon entry of this Interim Order and shall have, and be entitled to, the priorities as provided herein. None of the Debtors or the Secured Parties shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers, or other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien, or similar instruments in any domestic or foreign jurisdiction (including, trademark, copyright, trade name, or patent assignment filings with the United States Patent and Trademark Office, United States Copyright Office, or any similar agency with respect to intellectual property, or filings with any other federal, state, local, or foreign agencies or authorities), or obtain consents from any licensor or similarly situated party in interest, or take any other action in order to validate and to perfect the DIP Liens or the Replacement Liens or to establish the priorities as provided herein.

(a) If the Secured Parties, in their sole and absolute discretion, choose to take any action to obtain consents from any landlord, licensor, or other party in interest, to file mortgages, financing statements, notices of lien, or similar instruments, or to otherwise record or perfect such security interests and liens, such Secured Parties are hereby authorized, but not

directed to, take such action or to request that Debtors take such action on their behalf (and Debtors are hereby authorized and directed to take such action) and:

(i)  any such documents or instruments shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order; and

(ii)  no defect in any such act shall affect or impair the validity, perfection, and enforceability of the liens granted hereunder.

(b)  In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien, or similar instruments, the Secured Parties may, in their sole and absolute discretion, choose to file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of collateral, and such filing by the Secured Parties shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien, or similar instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

(c)  <u>Application of Collateral Proceeds</u>.  After an Event of Default and the expiration of the Remedies Notice Period, unless otherwise ordered by the Court, the Debtors are hereby authorized and directed to remit to the Secured Parties one-hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral, the Replacement Liens, and the Prepetition Collateral, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the Secured Parties to retain and apply all collections, remittances, and proceeds of the DIP Collateral, the Replacement Liens, and the Prepetition Collateral, except to

the extent otherwise provided herein (A) first, to the DIP Lender to satisfy or reduce the DIP

Loan Obligations until indefeasibly satisfied in full, (B) second, to the Existing Lender to satisfy

or reduce the Adequate Protection Claim set forth in the Interim Order or Final Order (as

applicable), and then (C) to the Existing Lender to satisfy or reduce the Prepetition Obligations

in accordance with the priorities set forth in the Existing Loan Documents and, in each case,

subject to the Amgen Intercreditor Agreement, until indefeasibly satisfied in full, (with (A) – (C)

collectively known as the "Distribution Priorities"); provided, however, that to the extent the

Carve-Out has not been previously funded, the payments set forth above shall be subject to the

Carve-Out.  In furtherance of the foregoing, (a) all cash, securities, investment property, and

other items of any Debtor deposited with any bank or other financial institution shall be subject

to a perfected, first-priority security interest in favor of the DIP Lender (or its designee) as well

as to the Replacement Liens; (b) upon the occurrence and during the continuance of an Event of

Default and the expiration of the Remedies Notice Period, each bank or other financial institution

with an account of any Debtor is hereby authorized and instructed to ~~(i)~~ comply at all times with

any instructions originated by the DIP Lender (or its designee) to such bank or financial

institution directing the disposition of cash, securities, investment property, and other items from

time to time credited to such account, without further consent of any Debtor, including, without

limitation, any instruction to send to the DIP Lender (or its designee) by wire transfer (to such

account as the DIP Lender (or its designee) shall specify, or in such other manner as the DIP

Lender (or its designee) shall direct) all such cash, securities, investment property, and other

items held by it, and (ii) waive any right of set off, banker's lien or other similar lien, security interest or encumbrance as against the DIP Lender (or its designee); and (c) any deposit account control agreement executed and delivered by any bank or other financial institution, any Debtor, and the Existing Lender prior to the Petition Date in connection with the Existing Loan Documents shall establish co-control in favor of the DIP Lender of any and all accounts subject thereto and any and all cash, securities, investment property, and other items of any Debtor deposited therein to secure the DIP Loan Obligations (provided that primary control rights shall vest in the DIP Lender), and all rights thereunder in favor of the Existing Lender shall inure also to the benefit of, and shall be exercisable exclusively by, the DIP Lender, until all of the DIP Loan Obligations have been indefeasibly paid in full, at which time exclusive control shall automatically revert to the Existing Lender.

22. 21.Cash Management Systems. Subject to the Debtors' cash management order entered by the Court, the Debtors are authorized and directed to maintain their cash management system in a manner consistent with the DIP Loan Documents, this Interim Order, and the order of this Court approving the maintenance of the Debtors' cash management system; provided, however, that such order is and remains at all times on terms and conditions acceptable to each of the Secured Parties and such order is not inconsistent with the terms specified herein or the DIP Loan Documents.

23. 22.Delivery of Documentation. The Debtors (and/or their legal or financial advisors) shall deliver to the DIP Lender, counsel to the DIP Lender, the Existing Lender and

DE Doc #213130v2

FINAL (4-11-17) 65099/004

counsel to the Existing Lender, and any financial advisors to the DIP Lender or the Existing

Lender, all financial reports, budgets, forecasts, and all other legal or financial documentation,

pleadings, and/or filings that are either (i) required to be provided (by the Debtors and/or their

legal or financial advisors) to the DIP Lender or the Existing Lender or such parties' legal and

financial advisors pursuant to the DIP Loan Documents or (ii) reasonably requested by the DIP

Lender or the Existing Lender (or their legal and financial advisors).

    24.    23. Access to Books and Records.  The Debtors (and/or their legal and financial

advisors) will (a) keep proper books, records, and accounts in accordance with GAAP in which

full, true, and correct entries shall be made of all dealings and transactions in relation to their

business and activities; (b) cooperate, consult with, and provide to the DIP Lender or the

Existing Lender all such information as required or allowed under the DIP Loan Documents, the

provisions of this Interim Order, or that is afforded to the Creditors' Committee and/or the

Creditors' Committee's respective legal or financial advisors; (c) permit, upon reasonable notice,

representatives of the DIP Lender or the Existing Lender to visit and inspect any of their

respective properties, to examine and make abstracts or copies from any of their respective books

and records, to conduct a collateral audit and analysis of their respective inventory and accounts,

to tour the Debtors' business premises and other properties, and to discuss, and provide advice

with respect to, their respective affairs, finances, properties, business operations, and accounts

with their respective officers, employees, and independent public accountants as often as may

reasonably be desired; and (d) permit representatives of the DIP Lender or the Existing Lender to

consult with and advise the Debtors' management on matters concerning the general status of the Debtors' business, financial condition, and operations.

25. 24.Lenders Not Responsible Persons. Subject to any applicable Challenge pursuant to paragraph 13 above, in (a) making the decision to make the DIP Loans or consenting to the use of Cash Collateral, (b) administering the DIP Loans, (c) extending other financial accommodations to the Debtors under the DIP Loan Documents and this Interim Order, (d) making the decision to make the loans and financial accommodations under the Existing Loan Documents, (e) administering the loans and financial accommodations extended under the Existing Loan Documents; (f) extending other financial accommodations to the Debtors under the Existing Loan Documents, and (g) making the decision to collect the indebtedness and obligations of the Debtors, none of the Secured Parties shall solely by reason thereof be considered to be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law, including without limitation, any environmental law (including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. 6901, et seq., as either may be amended from time to time, or any similar federal or state statute).

26. 25.Successors and Assigns. The DIP Loan Documents and the provisions of this Interim Order shall be binding upon the Debtors, the Secured Parties, and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the Secured Parties, and

DE Doc #213130v2

FINAL (4-11-17) 65099/004

each of their respective successors and assigns including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code. The terms and provisions of this Interim Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest, including, but not limited to a trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

27.   26. Binding Nature of Agreement.   The DIP Loan Documents to which the Debtors are a party shall constitute legal, valid, and binding joint and several obligations of the Debtors party thereto, enforceable in accordance with its terms.   The DIP Loan Documents have been or will be properly executed and delivered to the DIP Lender by the Debtors.   Unless otherwise consented to in writing by the Secured Parties in the sole and absolute discretion, the rights, remedies, powers, privileges, liens, and priorities of the Secured Parties provided for in this Interim Order, the DIP Loan Documents, or otherwise shall not be modified, altered, or impaired in any manner by any subsequent order (including a confirmation or sale order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or conversion of these Chapter 11 Cases, or in any subsequent case under the Bankruptcy Code.

28.   27. Subsequent Reversal or Modification.   This Interim Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rule 4001(b) and (c), granting the DIP Lender all protections and benefits afforded by section 364(e) of the Bankruptcy Code.   Any financial accommodations made to the Debtors by the Secured Parties pursuant to this Interim

DE Doc #213130v2

FINAL (4-11-17) 65099/004

49

Order and the DIP Loan Documents shall be deemed to have been made by the Secured Parties in good faith, as such term is used in section 364(e) of the Bankruptcy Code. ~~If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, that action will not affect (i) the validity of any obligation, indebtedness, or liability incurred hereunder by any of the Debtors to the Secured Parties prior to the date of receipt by the DIP Lender and the Existing Lender of written notice of the effective date of such action or (ii) the validity and enforceability of any lien or priority authorized or created under this Interim Order or pursuant to the DIP Loan Documents. Notwithstanding any such reversal, stay, modification, or vacatur, any postpetition indebtedness, obligation, or liability incurred by any of the Debtors to the Secured Parties prior to written notice to the DIP Lender and the Existing Lender of the effective date of such action shall be governed in all respects by the original provisions of this Interim Order, and the Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligations, or liability.~~

~~28.     Collateral Rights.     If any party who holds a lien or security interest in DIP Collateral or Prepetition Collateral that is junior and/or subordinate to the DIP Liens, the Replacement Liens, or the Prepetition Liens in such DIP Collateral or Prepetition Collateral receives or is paid the proceeds of such DIP Collateral or Prepetition Collateral, or receives any other payment with respect thereto from any other source, prior to the indefeasible payment in full in cash and the complete satisfaction of (a) all DIP Loan Obligations under the DIP Loan~~

~~DE Doc #213130v2~~

~~FINAL (4-11-17) 65099/004~~

Documents and termination of the commitment in accordance with the DIP Loan Documents, and (b) the Prepetition Obligations under the Existing Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral or Prepetition Collateral in trust for the DIP Lender and the Existing Lender and shall immediately turn over such proceeds to the DIP Lender for application to repay the DIP Loan Obligations and to the Existing Lender for application to repay the Prepetition Obligations in accordance with the DIP Loan Documents, the Existing Loan Documents, and this Interim Order until indefeasibly paid in full.

29.   Injunction.   Except as provided in the DIP Loan Documents and this Interim Order, the Debtors shall be enjoined and prohibited from, at any time during these Chapter 11 Cases, granting liens on the DIP Collateral, the Prepetition Collateral, or any portion thereof to any other parties, pursuant to section 364(d) of the Bankruptcy Code or otherwise, except in accordance with the DIP Loan Documents, the Existing Loan Documents and this Interim Order.

29.   30. No Waiver.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Secured Parties may have to bring or be heard on any matter brought before this Court.

30.   31. Sale/Conversion/Dismissal.

(a)   Subject to paragraph 34 hereof, the Debtors shall not The Debtors and the DIP Lender have agreed that it shall be an additional Event of Default under the DIP Term Sheet if the Debtors shall seek or support entry of any an order that provides for either the sale of the

DE Doc #213130v2

FINAL (4-11-17) 65099/004

51

ownership of the stock of the Debtors or the sale of all or substantially all of the DIP Collateral unless, in connection and concurrently with any such event, (i) the proceeds of such sale are or will be sufficient to indefeasibly pay in full in cash, and completely satisfy, in cash, all DIP Loan Obligations and the Adequate Protection Claim, and such DIP Loan Obligations and the Adequate Protection Claim are indefeasibly paid in full in cash and the commitments under the DIP Loan Documents and this Interim Order are terminated in accordance therewith on the closing date of such Sale, or (ii) the DIP Lender and Existing Lender consent to such sale in writing in their sole and absolute discretion.  For the avoidance of doubt, the DIP Lender and the Existing Lender each retains the right to file an objection to any proposed sale on any basis.

      (b)    The Debtors shall not and the DIP Lender have agreed that it shall be an additional Event of Default under the DIP Term Sheet if the Debtors shall seek or support the entry of any order dismissing these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code, or appointing a chapter 11 trustee or an examiner with expanded powers, unless and until (i) the DIP Loan Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents and the Existing Loan Documents are terminated in accordance therewith, or (ii) the DIP Lender and the Existing Lender expressly consent in writing to such relief in their sole and absolute discretion.  If an order dismissing or converting any of these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall be deemed to provide that (a) the DIP Liens, the DIP Superpriority Claim, and the Prepetition Adequate Protection Rights

DE Doc #213130v2

FINAL (4-11-17) 65099/004

52

~~granted hereunder and in the DIP Loan Documents shall continue in full force and effect, remain binding on all parties in interest, and maintain their priorities as provided in this Interim Order and the DIP Loan Documents until all DIP Loan Obligations, the Adequate Protection Claim, and the Prepetition Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents are terminated in accordance with the DIP Loan Documents and (b)~~ this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens, the DIP Superpriority Claim~~,~~ and the Prepetition Adequate Protection Rights.

31.    ~~32.~~<u>Limits on Liability</u>.  Nothing in this Interim Order or in any of the DIP Loan Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the Secured Parties of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

32.    ~~33.~~<u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, ~~unless such term or provision herein is phrased in terms of "as defined in," "as set forth in," or "as more fully described in" the DIP Loan Documents (or words of similar import),~~ the terms and provisions of this Interim Order shall govern.

33.    ~~34.~~No Modification of Amgen Agreements.    Notwithstanding any other provisions of the DIP Loan Documents and this Interim Order, nothing in this Interim Order or the DIP Loan Documents shall modify, alter or impair the parties' respective rights under the Amgen Intercreditor Agreement or the Letter Agreement dated February 22, 2016 regarding Non-Disturbance of License Agreements ("Letter Agreement") and all such rights under such agreements are expressly reserved and preserved. Nothing in this Interim Order shall affect, impair or otherwise prejudice any parties' rights under section 365(n) of the Bankruptcy Code.

34.    ~~35.~~No Third-Party Beneficiary.    Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect, or incidental beneficiary.

35.    ~~36.~~Survival.    Except as otherwise provided herein, (a) the protections afforded under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of these Chapter 11 Cases or (ii) converting any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the DIP Liens, the Replacement Liens, the DIP Superpriority Claim, and the Adequate Protection Claim shall continue in these Chapter 11 Cases, in any such Successor Cases, or after any such dismissal. Except as otherwise provided herein, the DIP Liens, the Replacement Liens, the DIP Superpriority Claim, and the Adequate Protection Claim shall maintain their priorities as provided in this Interim Order, the Final Order, and the DIP Loan Documents, and shall not be modified, altered, or impaired in any way by any other financing, extension of credit, incurrence

of indebtedness (except with respect to any additional financing to be provided by the DIP Lender in accordance with the Final Order), or any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases, or by any other act or omission until all DIP Loan Obligations and the Prepetition Obligations are indefeasibly paid in full in cash and completely satisfied, and the commitments under the DIP Loan Documents are terminated in accordance therewith.

36. ~~37.~~Notwithstanding anything to the contrary, the Debtors shall not make any distribution of DIP Collateral sale proceeds to the Existing Lender on account of the Prepetition Obligations until entry of a Final Order unless there is an Event of Default prior to entry of the Final Order, in which case such distribution shall be governed by paragraph 20(c) above and the other provisions of this Interim Order (a "Pre-Final Order Distribution"). In the event that there is a Pre-Final Order Distribution, any such distributions shall be held by the Existing Lender until the expiration of the Challenge Period Termination Date, upon which time the Existing Lender is authorized to apply such funds in accordance with this Interim Order or, if a timely Challenge is made, pursuant to a final order resolving such Challenge.

37. ~~38.~~Adequate Notice/Scheduling of Final Hearing. The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c) and the local rules of this Court and, under the circumstances, was adequate and sufficient. No further notice of the request for the relief granted at the Interim Hearing is required. The Debtors shall promptly mail copies of this Interim Order and notice of the Final

Hearing to any known party affected by the terms of this Interim Order and/or Final Order and any other party requesting notice after the entry of this Interim Order. Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be *actually received* no later than seven (7) days prior to the Final Hearing at 4:00 p.m. (Eastern) by the following: (a) the Office of the United States Trustee; (b) the Office of the United States Attorney for the District of Delaware; (c) the Internal Revenue Service; (d) the Securities and Exchange Commission; (e) the Debtors' 20 largest unsecured creditors on a consolidated basis; (f) counsel to the Existing Lender and the DIP Lender; (g) counsel for Amgen; and (h) all other known parties asserting a lien against any of the Debtors' assets. The Court shall conduct a Final Hearing on the Motion commencing on ~~May 4, 2017~~, at ~~__:__~~ 2:00 p.m. (Eastern).

38.    ~~39.~~Immediate Binding Effect; Entry of Interim Order. This Interim Order shall not be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim Order on the Court's docket in these Chapter 11 Cases.

39.    ~~40.~~Proofs of Claim. The Existing Lender shall not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein. The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Existing Lender upon approval of this Interim Order, and the Existing Lender shall be treated under

section 502(a) of the Bankruptcy Code as if it had filed a proof of claim.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or Successor Cases to the contrary, the Existing Lender is hereby authorized and entitled, in its sole discretion, but not required, to file a proof of claim in each of these Chapter 11 Cases or Successor Cases for any claim allowed herein.

40.    ~~41.~~Retention of Jurisdiction.  This Court shall retain exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Interim Order.

Dated:  Wilmington, Delaware
        April __, 2017

_____
Honorable Laurie Selber Silverstein
United States Bankruptcy Judge

## EXHIBIT A

(DIP TERM SHEET)