# EXHIBIT C

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| UNILIFE CORPORATION, et al.,[1] | ) | Case No. 17-10805 (LSS) |
|  | ) |  |
|  | ) | (Joint Administration Requested) |
| Debtors. | ) |  |

**INTERIM ORDER (I) AUTHORIZING DEBTORS-IN-POSSESSION
TO OBTAIN POSTPETITION SECURED SUPERPRIORITY
FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL,
(III) GRANTING ADEQUATE PROTECTION, (IV) SCHEDULING
FINAL HEARING, AND (V) GRANTING CERTAIN RELATED RELIEF**

Upon the motion dated April 12, 2017 (the "Motion"), seeking entry of an interim

order (this "Interim Order"), *inter alia,*

(a)  authorizing the Debtors to obtain secured postpetition superpriority financing (the "DIP Facility") on an interim basis pursuant to the terms and conditions of that certain *Priming Superpriority Debtor-in-Possession Term Credit Facility Term Sheet* dated as of April 11, 2017, by and among the Debtors and ROS Acquisition Offshore LP or its designee (the "DIP Lender"), attached hereto as Exhibit A (as amended, supplemented, restated, or otherwise modified from time to time in accordance therewith, the "DIP Term Sheet," and together with the other documents, agreements, and instruments delivered pursuant thereto or executed or filed in connection therewith, as may be reasonably requested by the DIP Lender, as such may be amended, supplemented, restated, or otherwise modified from time to time, the "DIP Loan Documents");[2]

---

[1] The Debtors in these chapter 11 cases are the following entities (the last four digits of each Debtor's respective federal tax identification number, if any, follow in parentheses): Unilife Corporation (9354) ("Holdings"), Unilife Medical Solutions, Inc. (9944), and Unilife Cross Farm LLC (3994). The Debtors' mailing address for each Debtor is 250 Cross Farm Lane, York, PA 17406.

[2] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the DIP Term Sheet.

DE Doc. #213130v1

FINAL (4-11-17) 65099/004

1

(b)     authorizing the Debtors to execute the DIP Loan Documents, and to perform such other acts as may be necessary or desirable in connection therewith;

(c)     granting an allowed superpriority administrative expense ~~claims~~ claim to the DIP Lender;

(d)     granting to the DIP Lender security interests in and liens on the DIP Collateral (as defined below) pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code as set forth in the DIP Term Sheet to secure the DIP Facility and all obligations owing and outstanding thereunder and under the DIP Loan Documents, as applicable, and this Interim Order and the Final Order (as defined below), as applicable (collectively, the "DIP Loan Obligations");

(e)     authorizing the Debtors to use Cash Collateral (as defined below) (together with the DIP Facility, the "Postpetition Financing Arrangement");

(f)     authorizing the Debtors to grant adequate protection to ROS Acquisition Offshore LP, as lender under that certain *Credit Agreement* dated as of March 12, 2014 (as it has been amended, restated, modified, supplemented, or replaced from time to time prior to the Petition Date (as defined below) (the "Existing Credit Facility" and together with all agreements, documents, notes, mortgages, security agreements, pledges, guaranties, subordination agreements, instruments, amendments, and any other agreements and documents delivered pursuant thereto or in connection therewith, the "Existing Loan Documents") by and between the Company, as borrower, and ROS Acquisition Offshore LP, as lender (in its capacity as such, the "Existing Lender"); and

(g)     scheduling a hearing (the "Final Hearing"), pursuant to Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to consider entry of a final order (the "Final Order"), *inter alia*, approving and authorizing the Postpetition Financing Arrangement (including, without limitation, the advance under the DIP Facility contemplated by this Interim Order) on a final basis pursuant to the DIP Loan Documents;

and the interim hearing on the Motion (the "Interim Hearing") having been held on April 13, 2017; and upon all of the pleadings filed with the Court and the evidence proffered or adduced at the Interim Hearing; and the Court having heard and resolved or overruled any and all objections

~~DE Doc. #213130v1~~                                    2

~~FINAL (4-11-17) 65099/004~~

to the interim relief requested in the Motion; and it appearing that the relief requested in the

Motion is in the best interests of the Debtors, their estates, and creditors; and upon the record

herein; and after due deliberation thereon, and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

   A. Petition Date. On April 12, 2017 (the "Petition Date"), the Debtors

commenced their chapter 11 cases (these "Chapter 11 Cases") by filing voluntary petitions for

relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the

United States Bankruptcy Court for the District of Delaware (the "Court").  The Debtors are

operating their businesses and managing their affairs as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner,

or official committee of creditors holding unsecured claims (a "Creditors' Committee") has been

appointed in any of these Chapter 11 Cases.

   B. Jurisdiction; Venue. The Court has jurisdiction over these Chapter 11

Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. § 1334.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).  The Court is a proper venue of these Chapter

11 Cases and the Motion under 28 U.S.C. §§ 1408 and 1409.

   C. Notice. Notice of the Motion has been provided to: (i) the Office of the

United States Trustee; (ii) the Office of the United States Attorney for the District of Delaware;

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

DE Doc. #213130v1       3

FINAL (4-11-17) 65099/004

(iii) the Internal Revenue Service; (iv) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis; (v) counsel to the Existing Lender and the DIP Lender; (vi) counsel for Amgen; and (vii) all other known parties asserting a lien against any of the Debtors' assets, in each case by telecopy, email, overnight courier, and/or hand delivery.  Because of the nature of the relief requested, the Debtors respectfully submit that no other or further notice of the relief requested in this Motion need be given.

        D.      <u>Debtors' Acknowledgments and Stipulations</u>.  In requesting the Postpetition Financing Arrangement, and in exchange for and as a material inducement for the DIP Lender and the Existing Lender to agree to provide the Postpetition Financing Arrangement, the Debtors acknowledge, represent, stipulate, and agree, subject to the challenge rights set forth in paragraph 13 herein, as follows:

        (i)      The Debtors and the Existing Lender entered into the Existing Credit Facility pursuant to which the prepetition borrowers obtained secured financing from the Existing Lender, guaranteed by the prepetition guarantors (collectively, the "<u>Prepetition Obligations</u>").

        (ii)      The Prepetition Obligations are secured by valid, enforceable, duly perfected, and non-avoidable liens and security interests granted to the Existing Lender on substantially all of the Debtors' assets and on substantially all of the assets of non-debtor subsidiaries Unilife Medical Solutions, Limited and Unitract Syringe Pty Limited, including Cash Collateral (the "<u>Prepetition Liens</u>").

(iii)    The Prepetition Liens are senior, first-priority liens on all of the collateral, except for (x) any items of the collateral that are, as of the Petition Date, subject to valid, enforceable, duly perfected, and non-avoidable first-priority liens of third parties as set forth in the schedules to, or as otherwise permitted under, the Existing Loan Documents; and (y) the Amgen Collateral, as defined, and to the extent provided, in the Amgen Intercreditor Agreement (as defined in the DIP Term Sheet ) (collectively, (x) and (y) above, the "Permitted Liens," and the items of collateral securing the Permitted Liens collectively, the "Permitted Lien Collateral"). All "Collateral" as defined in the Existing Credit Facility granted or pledged by the Debtors to the Existing Lender pursuant to any of the Existing Loan Documents shall be collectively referred to as the "Prepetition Collateral."

(iv)    As of the Petition Date, (a) the aggregate amount of principal and accrued interest owed under the Existing Loan Documents to the Existing Lender is approximately $86.7 million together with fees, expenses, and other additional amounts that are chargeable or otherwise reimbursable under the Existing Loan Documents; (b) all of the Prepetition Obligations are unconditionally owing by the Debtors to the Existing Lender; and (c) the Prepetition Obligations are not subject to any avoidance, reductions, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as and to the limited extent expressly set forth in paragraph 13 herein.

DE Doc. #213130v1                                    5

FINAL (4-11-17) 65099/004

(v)     The Prepetition Liens constitute valid, binding, enforceable, and duly perfected liens and security interests, with priority over any and all other liens and security interests other than (only in respect of the Permitted Lien Collateral) the Permitted Liens, and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, recoupment, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as and to limited extent expressly set forth in paragraph 13 herein.

(vi)    The Debtors have waived, discharged, and released any right they may have to challenge the Prepetition Obligations or the Prepetition Liens on the Prepetition Collateral, or to assert any offsets, recoupment, defenses, claims, objections, challenges, causes of action and/or choses of action against the Existing Lender, with respect to the Prepetition Obligations, the Prepetition Liens, or the Prepetition Collateral, or any matters arising therefrom or related thereto.

(vii)   Any payments made on account of the Prepetition Obligations before the Petition Date were (a) payments out of the Prepetition Collateral or (b) made in the ordinary course of business and did not diminish any property otherwise available for distribution to unsecured creditors.

(viii)   All of the Debtors' cash, including the cash in their deposit accounts, securities accounts, and any other accounts, wherever located, whether as original collateral or as proceeds of other Prepetition Collateral, constitutes Cash Collateral of the Existing Lender.

E.    Postpetition Financing.

(i)    Neither the DIP Lender nor the Existing Lender (collectively, the "Secured Parties") is a control person or insider of the Debtors by virtue of any of the actions taken by them in respect of or in connection with the Postpetition Financing Arrangement or the Prepetition Obligations or otherwise.

(ii)    Upon approval of this Interim Order by the Court, the Debtors need not obtain any other authorizations, consents, or approvals, or make any filings with or give any notices to, any federal, state, or local governmental agencies, authorities, or instrumentalities, in connection with the execution, delivery, validity, enforceability, and priority of the DIP Loan Documents to which any Debtor is a party and the use of Cash Collateral.

(iii)    Until such time as all DIP Loan Obligations are indefeasibly paid in full in cash, and except for existing prepetition Permitted Liens and for the liens and security interests granted in this Interim Order or, to the extent contemplated by the Motion, in the Final Order, no other liens or security interests shall attach to, or be granted in, any property of the Debtors' estates or their non-debtor subsidiaries.  Without limiting the foregoing, except for existing prepetition Permitted Liens, the Debtors shall not grant, create, or suffer any lien or security interest in any property of their estates or their non-debtor subsidiaries and shall not in any way

prime or seek to prime (or otherwise cause to be subordinated in any way) the liens provided to the DIP Lender or the Existing Lender by offering a subsequent lender or any party-in-interest a superior or *pari passu* lien or claim with respect to the DIP Collateral or the Replacement Liens (as defined below) pursuant to section 364(d) of the Bankruptcy Code, or otherwise, except as provided herein for the Carve-Out (as defined below).

(iv)    Until such time as all DIP Loan Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way or at any time permit to exist an administrative expense claim against the Debtors' estates of any kind or nature whatsoever that is superior to, or *pari passu* with, the DIP Superpriority Claim (as defined below) or the Adequate Protection Claim (as defined below) provided herein, including, without limitation, any claims of the kind specified in, or arising or ordered under, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 or 1114 of the Bankruptcy Code, except as provided herein for the Carve-Out.

F.    <u>Cash Collateral</u>.  For purposes of this Interim Order, the term "<u>Cash Collateral</u>" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the Existing Lender holds a lien, security interest, or other interest (including, without limitation, any adequate protection liens or security interests) whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise and shall include, without limitation:

(i)    all cash proceeds arising from the collection, sale, lease, or other disposition, use, or conversion of any property, insurance policies, or in or on which the Existing Lender has a lien or a replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of these Chapter 11 Cases, or arose or was generated thereafter;

(ii)    all of the respective deposits, refund claims, and rights in retainers of the Debtors on which the Existing Lender has a lien or replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise;

(iii)    the proceeds of any sale of DIP Collateral or Prepetition Collateral in connection with any sale consummated prior to entry of the Final Order; and

(iv)    any and all other "cash proceeds" (as defined in the Uniform Commercial Code as enacted in the State of New York) of the DIP Collateral or the Prepetition Collateral, or of any proceeds thereof.

G.    <u>Adequate Protection</u>.  The Existing Lender is entitled, pursuant to sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code, to adequate protection to the extent of any diminution in the value of its interests in the Prepetition Collateral, including the Cash Collateral, resulting from, among other things, (a) the incurrence of the priming DIP Loan Obligations, (b) the use of Cash Collateral, (c) the granting of the DIP Liens (as defined below) and the DIP Superpriority Claim, (d) the acquiescence of the Existing Lender in the Carve-Out, (e) any other

diminution in the value of the Prepetition Collateral, and (f) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

H.      Purpose and Necessity of Financing.    As discussed in the Motion, the Debtors require the financing under the DIP Facility (the "DIP Loans") (i) to maximize and preserve the value of their businesses pending the sale of substantially all of their assets or consummation of a plan of reorganization, (ii) to satisfy payroll obligations and other working capital and general corporate purposes of the Debtors consistent with the terms set forth in the DIP Loan Documents and the Approved Budget (as defined below), (iii) to pay fees and expenses related to the DIP Loan Documents and these Chapter 11 Cases, and (iv) for such other purposes as are set forth in the DIP Loan Documents. If the Debtors do not obtain authorization to borrow under the DIP Loan Documents, they will suffer immediate and irreparable harm. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient financing under section 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents, based on the totality of the circumstances. A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtors without granting the DIP Lender superpriority claims, liens, and security interests, pursuant to section 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, as provided in this Interim Order and the DIP Loan Documents. After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the Postpetition Financing Arrangement,

including, without limitation, the financing pursuant to this Interim Order, represents the best financing available to them at this time.

      I.    Good Cause Shown. Good cause has been shown for entry of this Interim Order. The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Loan Documents is vital to the Debtors' estates and creditors. The liquidity to be provided under the DIP Loan Documents will enable the Debtors to preserve the value of the Debtors' businesses pending a sale of substantially all of their assets or the consummation of a plan. Among other things, entry of this Interim Order is necessary to maximize the value of the Debtors' assets and to avoid immediate and irreparable harm to the Debtors and their estates and, accordingly, is in the best interests of the Debtors, their estates, and their creditors.

      J.    Sections 506(c) and 552(b) Waivers. In light of (i) the DIP Lender's agreement to the Carve-Out, and in exchange for and as a material inducement to the DIP Lender to agree to provide the DIP Facility and (ii) the Existing Lender's agreement to the Carve-Out and the DIP Liens, and to permit the use of its Cash Collateral for payments made in accordance with the Approved Budget and the terms of this Interim Order, the Secured Parties are each entitled to (1) subject to entry of the Final Order, a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (2) subject to entry of the Final Order, a waiver of the provisions of section 506(c) of the Bankruptcy Code.

      K.    Good Faith. The terms of the DIP Loan Documents are more favorable to the Debtors than those available from any alternative sources. Based upon the record before the

Court, the DIP Loan Documents have been negotiated in good faith and at arm's length. Any DIP Loans and other financial accommodations made to the Debtors pursuant to the DIP Loan Documents and this Interim Order shall be deemed to have been extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Lender shall be entitled to all protections and benefits afforded thereby.

L.    Fair Consideration and Reasonably Equivalent Value.    Each of the Debtors has received and will receive fair consideration and reasonable value in exchange for access to the DIP Loans and all other financial accommodations provided under the DIP Loan Documents and this Interim Order. The terms of the DIP Loan Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M.    Immediate Entry of Interim Order.    The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2). The permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for access to the financing necessary to sustain the continued operations of the Debtors and further enhance the Debtors' prospects of a reorganization or for a successful sale of substantially all of their assets. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this

Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    <u>Disposition</u>.  The Motion is granted on an interim basis on the terms set forth in this Interim Order.  Any objection to the interim relief sought in the Motion that has not previously been withdrawn or resolved is hereby overruled on its merits.  The term of the DIP Loans and the use of Cash Collateral authorized hereunder shall expire, and the DIP Loans made pursuant to this Interim Order and the DIP Loan Documents will mature and, together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become immediately due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Interim Order by way of acceleration or otherwise) without further notice or hearing on the earlier of (a) May 16, 2017, if the Final Order has not been entered by the Court prior to such date, and (b) the Termination Date (as defined below).

### AUTHORIZATION FOR DIP FINANCING AND USE OF CASH COLLATERAL

2.    <u>Authorization for DIP Financing and Use of Cash Collateral</u>.

(a)    The Debtors are hereby authorized, on an interim basis, to incur the DIP Loan Obligations immediately, subject to the terms of this Interim Order, the Approved Budget, and the DIP Loan Documents, in the aggregate during the period prior to the entry of the Final Order of up to $1 million as provided in the Approved Budget (the "<u>Interim Borrowing</u>"), with the maximum amount to be borrowed after entry of the Final Order not to exceed $7.5 million

(inclusive of the Interim Borrowing) (the "Total Commitment"). Available financing and advances under the DIP Loan Documents shall, on an interim basis, be made consistently with the terms set forth in the Approved Budget and the DIP Loan Documents, and shall provide for the payment of interest, fees, and expenses in accordance with this Interim Order and the DIP Loan Documents, and of any other amounts required or allowed to be paid in accordance with this Interim Order. The Debtors are authorized to use Cash Collateral subject to and in accordance with the terms, conditions, and limitations set forth in this Interim Order, the Approved Budget, and the DIP Loan Documents, without further approval by the Court.

(b) Approved Budget. The Debtors have delivered to the DIP Lender and Existing Lender a budget that has been approved by each of the DIP Lender and the Existing Lender (the "Approved Budget") for the time period from and including the Petition Date through June 30, 2017. A copy of the Approved Budget is attached hereto as Exhibit B. The Debtors shall provide to the DIP Lender, the Existing Lender, and Amgen updates to the Approved Budget and financial reporting with respect to the Debtors in accordance with the terms of the DIP Loan Documents. Funds borrowed under the DIP Loan Documents and Cash Collateral used under this Interim Order shall be used by the Debtors in accordance with this Interim Order. The consent of the DIP Lender to the Approved Budget shall not be construed as a commitment to provide DIP Loans or to permit the use of Cash Collateral after the occurrence of the Termination Date, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

DE Doc. #213130v1          14

FINAL (4-11-17) 65099/004

(c)     By not later than four (4) business days after the end of the week following the Petition Date, the Debtors shall deliver to the Existing Lender, the DIP Lender and Amgen a variance report in form and substance acceptable to the Existing Lender and the DIP Lender in their sole and absolute discretion (an "Approved Variance Report") showing comparisons of actual results for each line item against such line item in the Approved Budget. Thereafter, Debtors shall deliver to the DIP Lender, the Existing Lender and Amgen, by not later than four (4) business days after the close of each weekly period after the Petition Date, an Approved Variance Report for the trailing four (4) week period (or, if fewer than four weeks have elapsed since the Petition Date, then for the trailing one-, two-, or three-week period, as applicable).  Each Approved Variance Report shall indicate whether there are any adverse variances that exceed the "Permitted Variances," which means, in each case measured on a cumulative basis, (x) up to 10% for cash disbursements measured weekly on a line-item basis, (y) up to 20% for cash receipts measured every three weeks on a line-item basis, or (z) up to 10% in the aggregate for all cash disbursements as set forth in the DIP Term Sheet ("Permitted Variances").

(d)     The DIP Lender (i) may assume the Debtors will comply with the Approved Budget, (ii) shall have no duty to monitor such compliance, and (iii) shall not be obligated to pay (directly or indirectly from the DIP Collateral or Prepetition Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to the Approved Budget, except for the Carve-Out as provided by this Interim Order.  All advances and extensions of credit shall

be based upon the terms and conditions of the DIP Loan Documents, as the same may be adjusted from time to time with the written consent of the DIP Lender in its sole and absolute discretion.

(e)      In connection with any challenge pursuant to paragraph 13 hereof, to the extent that any court order is entered directing disgorgement of any payments made by the Debtors to the Existing Lender, either before or after the Petition Date, all proceeds recovered by the Debtors' estates in connection with such order(s) directing disgorgement shall be applied first to repayment of the DIP Loan Obligations until the DIP Loan Obligations are indefeasibly paid in full in cash.

3.      <u>Authority to Execute and Deliver Necessary Documents</u>.

(a)      Each of the Debtors is authorized to negotiate, prepare, enter into, and deliver the DIP Loan Documents, including, without limitation, any UCC financing statements, pledge and security agreements, and mortgages or deeds of trust encumbering all of the DIP Collateral and securing all of the Debtors' obligations under the DIP Loan Documents, each as contemplated by the DIP Term Sheet or as may be reasonably requested by the DIP Lender.

(b)      Each of the Debtors is further authorized to perform all of its obligations and acts required under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for therein, and in this Interim Order.

4.      <u>Valid and Binding Obligations</u>.  All obligations under the DIP Loan Documents shall constitute valid and binding obligations of each of the Debtors, enforceable against each of

them and their bankruptcy estates and each of their respective successors and assigns (including any chapter 11 trustee or chapter 7 trustee), in accordance with their terms and the terms of this Interim Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5.    Authorization for Payment of DIP Financing Fees and Expenses. All fees payable, and costs and/or expenses reimbursable under this Interim Order or the DIP Loan Documents (including, without limitation, all reasonable fees, costs, and expenses referred to in the DIP Loan Documents and the DIP Lender's reasonable attorneys' fees and expenses, whether incurred prepetition or postpetition) shall be paid by the Debtors to the DIP Lender (collectively, the "DIP Lender Fees and Expenses"). The Debtors are hereby authorized to pay all such fees, costs, and expenses in accordance with the terms of the DIP Loan Documents and this Interim Order, without the need for filing any further application, pleading, notice, or document with the Court for approval or payment of such fees, costs, or expenses. The Debtors shall pay all reasonable prepetition and postpetition out-of-pocket costs and expenses of the DIP Lender (including all reasonable fees, expenses, and disbursements of outside counsel, including any local counsel, and consultants) in connection with these Chapter 11 Cases and any Successor Cases (as defined below), including, without limitation, for (a) the preparation, execution, and

delivery of the DIP Loan Documents, this Interim Order, and any Final Order, and the funding of

all DIP Loans under the Postpetition Financing Arrangement; (b) the administration of the

Postpetition Financing Arrangement and any amendment or waiver of any provision of the DIP

Loan Documents, this Interim Order, and any Final Order; and (c) the enforcement or protection

of any of their respective or collective rights and remedies under the DIP Loan Documents, this

Interim Order, and any Final Order.  None of the ~~fees and disbursements of DIP Lenders'~~

~~attorneys, financial advisors, or accountants~~ DIP Lender Fees and Expenses shall be subject to

the prior approval of this Court ~~or the guidelines of the Office of the United States Trustee for~~

~~this region (the "U.S. Trustee")~~. Under no circumstances shall the DIP Lender's professionals be

required to submit invoices in any particular format, and no recipient of any ~~such~~ payment of

such professional fees shall be required to file with respect thereto any interim or final fee

application with this Court.  Any ~~such fees, costs, and expenses~~ DIP Lender Fees and Expenses

shall be paid within five (5) business days of delivery of a summary invoice (redacted for

privilege) to the Debtors, with a copy of each such invoice (also redacted for privilege) to be

delivered by the Debtors to the U.S. Trustee and any Creditors' Committee and without the need

for further application to or order of the Court.

     6.  ~~Amendments, Consents, Waivers, and Modifications.  (a)~~Amendments, Consents,

Waivers, and Modifications

     (a)  ~~6.~~The Debtors, with the express written consent of the DIP Lender and the

Existing Lender (each in its sole and absolute discretion), may enter into any nonmaterial

amendments, consents, waivers, or modifications to the DIP Loan Documents without the

need for further notice or hearing or any order of this Court.  Material amendments, consents,

waivers, and modifications (each, a "Material Modification") of the DIP Loan Documents shall require the ~~express written consent of the DIP Lender and the Existing Lender (each in its sole and absolute discretion) and five (5) days' written notice to any Creditors' Committee and counsel to Amgen. If no written objection to the proposed Material Modification is delivered to~~ approval of the Court, provided that, the Debtors, the DIP Lender~~, and~~ or the Existing Lender ~~within such notice period, the Material Modification shall become effective without the need for further notice or hearing or any order of this Court. If a written objection to a Material Modification is so delivered within such five (5) day period, the Material Modification shall not be effective unless approved by the Court. (b)The budget annexed to this Interim Order shall constitute the Approved Budget for the period commencing with the Petition Date through and including the Maturity Date. The Approved Budget may be modified, and the Maturity Date otherwise extended from time to time, pursuant to a mutually-acceptable modified Approved Budget (the "Modified Budget") (i) as may be agreed to by the DIP Lender, the Existing Lender, the Debtors, and any Creditors' Committee, without further order of the Court, upon the filing of a copy of such Modified Budget with the Court, or (ii) as may be agreed to by the DIP Lender, the Existing Lender, and the Debtors, and authorized by further order of the Court.~~may seek such approval for a Material Modification on five (5) business days' written notice to the U.S. Trustee, counsel for any Creditors' Committee, counsel to Amgen and parties who have requested notice under Bankruptcy Rule 2002(i). Absent objection by such deadline, the parties may submit an order approving a Material Modification for consideration without a hearing.

(b)    The budget annexed to this Interim Order shall constitute the Approved Budget for the period commencing with the Petition Date through and including the Outside Date.  The Debtors, with the express written consent of the DIP Lender and the Existing Lender (each in its sole and absolute discretion), may enter into any nonmaterial revisions to the Approved Budget without the need for further notice or hearing or any order of this Court.  A material revision to the Approved Budget shall require the approval of the Court following notice and a hearing, provided that, the Debtors, the DIP Lender or the Existing Lender may seek approval for a material revision on five (5) business days' written notice to the U.S. Trustee, counsel for any Creditors' Committee, counsel to Amgen and parties who have requested notice under Bankruptcy Rule 2002(i).  Absent objection by such deadline, the parties may submit an order approving a revised budget for consideration without a hearing.

## DIP LIENS AND DIP SUPERPRIORITY ~~CLAIMS~~CLAIM

7.    DIP Lender's Lien Priority.

(a)    To secure the DIP Loan Obligations, the DIP Lender is hereby granted~~, pursuant to sections 364(c)(2), 364(c)(3) (solely as to the Permitted Liens), and~~ (x) pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, enforceable and fully perfected  first-priority lien and security interest on all DIP Collateral that is not otherwise subject to a lien, (y) pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, enforceable and fully perfected lien and security interest on all DIP Collateral that is junior to the Permitted Liens and senior to the Prepetition Liens, and (z) pursuant to section 364(d)(1) of the Bankruptcy Code, a_valid, enforceable~~,~~ and fully perfected~~,~~ first-priority priming ~~liens on~~ lien and ~~senior~~ security ~~interests~~

in interest that is senior to the Prepetition Liens (collectively, the "DIP Liens"). Upon entry of this Interim Order, the DIP Liens shall attach with the foregoing priorities to all of the property, assets, and interests in property or assets of each Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or nature whatsoever, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created (the "DIP Collateral"), provided that, including the DIP Collateral shall not include avoidance actions under chapter 5 of the Bankruptcy Code ("Avoidance Actions") unless and until the Final Order so provides. The DIP Collateral shall include, without limitation, all of each Debtor's now owned or hereafter acquired right, title, and interest in and to all cash, accounts, accounts receivable, commercial tort claims, general intangibles, payment intangibles, all Intellectual Property (as that term is defined in the Existing Credit Facility), inventory, equipment, real estate, documents, instruments, deposit accounts, tax refunds, contract rights, chattel paper, investment property, letters of credit and letter-of-credit rights, money, fixtures, leasehold interests, avoidance actions under chapter 5 of the Bankruptcy Code ("Avoidance Actions") (subject, in the case of Avoidance Actions, to entry of the Final Order), all intercompany claims, any and all proceeds arising from insurance policies including, without limitation, policies for the benefit of directors and officers of the Debtors to the extent such policies and proceeds are property of the Debtors, all claims and causes of action of the Debtors or their respective estates in the Chapter 11 Cases (subject, in the case of any Avoidance Actions, to entry of the Final Order), and any and all proceeds, profits, and products from all of the foregoing collateral, all supporting obligations

therefor, and all accessions thereto, and the equity interests of each direct and indirect subsidiary of Holdings, which "DIP Collateral," for the avoidance of doubt, shall include, without limiting the generality of the foregoing, all assets of any Obligor that secures obligations pursuant to the Existing Credit Facility, .  The DIP Liens on the DIP Collateral shall be subject only to (i) the Permitted Liens and (ii) the Carve-Out;.

(b)    The DIP Liens shall be effective immediately upon the entry of this Interim Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest, or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, subject to (i) the Permitted Liens and (ii) the Carve-Out.

(c)    The DIP Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this Interim Order, with the priorities set forth in this Interim Order, without the necessity of execution by the Debtors of any mortgages, security agreements, pledge agreements, financing agreements, financing statements, filings in the U.S. Patent and Trademark Office or the U.S. Copyright Office, or any other agreements, instruments, documents, notices, recordations, or filings, domestic or foreign, such that no additional actions need be taken by the DIP Lender, or any other person or entity to perfect such interests or to create the priorities set forth in this Interim Order.  Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, certificate of title, or other instrument or agreement that requires the

consent or approval of one or more landlords, licensors, or other parties, or requires the payment

of any fees or obligations to any governmental entity, nongovernmental entity or any other

person, in order for any of the Debtors to pledge, grant, mortgage, sell, assign, or otherwise

transfer any fee or leasehold interest or the proceeds thereof or other collateral, is and shall be

deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or

effect with respect to the transactions granting the DIP Lender a first-priority security interest in

such fee, leasehold, or other interest or other collateral or the proceeds of any assignment, sale,

or other transfer thereof, by any of the Debtors in favor of the DIP Lender, in accordance with

the terms of the DIP Loan Documents.  Notwithstanding anything to the contrary herein, nothing

in this Interim Order shall affect, impair, or otherwise prejudice any rights that the Debtors'

landlords may have or have the effect of encumbering, pledging, or collateralizing the leasehold

interests of the Debtors with respect to premises owned by such landlord to the extent otherwise

prohibited under the terms of the applicable lease with such landlord.

8.     DIP Lender's Superpriority Claim.  The DIP Lender is hereby granted an allowed

superpriority administrative expense claim (the "DIP Superpriority Claim") pursuant to section

364(c)(1) of the Bankruptcy Code in each of the Debtors' Chapter 11 Cases and in any successor

cases under the Bankruptcy Code (including any case or cases under chapter 7 of the Bankruptcy

Code, the "Successor Cases") for all DIP Loan Obligations, having priority over any and all

other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever,

including, without limitation, all administrative expenses of the kinds specified in or arising or

ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, or 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment.  Notwithstanding the foregoing and solely for the purposes of this Interim Order, the allowed DIP Superpriority Claims shall not be payable from the proceeds of Avoidance Actions, provided that the DIP Loan Obligations shall nevertheless be payable on a pari passu basis with other allowed administrative expenses from the proceeds of Avoidance Actions.  Notwithstanding anything to the contrary herein, the DIP Superpriority Claim granted in this paragraph shall be subject to payment of the Carve-Out.  Except as set forth herein, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases or in any Successor Case.~~The DIP Superpriority Claim shall be senior in all respects to all other administrative expense claims granted in these Chapter 11 Cases including, without limitation, on account of any claim arising from any breakup fee or expense reimbursement that may be granted by the Court in connection with the sale of the Debtors' assets.~~

### ADEQUATE PROTECTION

9.      _Adequate Protection for Existing Lender_.  As adequate protection for the diminution, if any, in the value of the Existing Lender's interests in the Prepetition Collateral, resulting from, among other things, (a) the incurrence of the priming DIP Loan Obligations, (b) the use of Cash Collateral, (c) the granting of the DIP Liens and the DIP Superpriority Claim, (d) the acquiescence of the Existing Lender in the Carve-Out, (e) any other diminution in the

value of the Prepetition Collateral, and (f) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "Diminution"), the Existing Lender is hereby granted the following ((a) through (e) below shall be referred to collectively as the "Prepetition Adequate Protection Rights"):

       (a)    Replacement Liens.    To secure the Adequate Protection Claim, the Existing Lender is hereby granted valid, enforceable, and fully perfected postpetition security interests and liens (collectively, the "Replacement Liens") in all of the DIP Collateral, provided, however, that (i) solely for the purposes of this Interim Order, the Replacement Liens shall not attach to Avoidance Actions and (ii) the Replacement Liens shall be and remain subject and subordinate to (A) the DIP Liens (B) the Permitted Liens and (C) the Carve-Out.    The Replacement Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this Interim Order, with the priorities set forth in this Interim Order, without the necessity of execution by the Debtors of any mortgages, security agreements, pledge agreements, financing agreements, financing statements, filings in the U.S. Patent and Trademark Office or the U.S. Copyright Office, or any other agreements, instruments, documents, notices, recordations, or filings, domestic or foreign, such that no additional actions need be taken by the Existing Lender, or any other person or entity to perfect such interests or to create the priorities set forth in this Interim Order.

       (b)    Adequate Protection Superpriority Claim.  As further adequate protection, the Existing Lender is hereby granted a superpriority claim for the Diminution, which claim shall

have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 or 1114 and any other provision of the Bankruptcy Code (the "Adequate Protection Claim"), provided, however, that, solely for the purposes of this Interim Order, the Adequate Protection Claim shall not be paid from the proceeds of Avoidance Actions.  The Adequate Protection Claim shall be subordinate only to the DIP Superpriority Claim and the Carve-Out.

(c)     Consent to Priming and Adequate Protection.  The Existing Lender consents to the use of Cash Collateral to the extent set forth herein, the priming provided for herein, and the Approved Budget; provided, however, that (i) such consent is expressly conditioned upon the entry of this Interim Order (in form and substance satisfactory to the Existing Lender), (ii) such consent shall not be deemed to extend to any other replacement financing or debtor-in-possession financing other than the DIP Loans provided by the DIP Lender under the DIP Loan Documents, (iii) such consent shall not be deemed a basis to deny or impair the Existing Lender's entitlement to the Prepetition Adequate Protection Rights, and (iv) such consent shall be of no force and effect in the event that this Interim Order is not entered or is vacated or is modified in any respect without the consent of the DIP Lender and the Existing Lender, or if the DIP Loan Documents or DIP Loans as set forth herein and therein are not approved.