## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UNILIFE CORPORATION, *et al.*,[1] | ) | Case No. 17-10805 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: [Proposed] May 8, 2017 at 10:00 a.m.** |
| | | **Objection Deadline: [Proposed] May 5, 2017 at 4:00 p.m.** |

## DEBTORS' MOTION FOR APPROVAL OF
## KEY EMPLOYEE INCENTIVE PLAN

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court (the "Motion") for approval, pursuant to sections 105(a), 363(b), and 503(c)(3) of title 11 of the United States Code (the "Bankruptcy Code"), of its proposed key employee incentive plan (the "KEIP" or the "Plan"), pursuant to entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Order"). The terms of the KEIP are set forth in the term sheet attached to the Proposed Order as Exhibit 1 thereto. In support of the Motion, the Debtors rely on and incorporate by reference the Declaration of Mary Kate Wold (the "Wold Declaration"), attached hereto as Exhibit B. In further support of this Motion, the Debtors respectfully represent:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these Chapter 11 Cases are the following entities (the last four digits of each Debtor's respective federal tax identification number, if any, follow in parentheses): Unilife Corporation (9354), Unilife Medical Solutions, Inc. (9944), and Unilife Cross Farm LLC (3994). The Debtors' corporate headquarters and the mailing address for each Debtor is 250 Cross Farm Lane, York, PA 17406.

2.     The statutory predicates for the relief requested herein are sections 105(a), 363 and 503(c)(3) of the Bankruptcy Code.  The relief is further warranted under Bankruptcy Rule 6004.

3.     Pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## BACKGROUND

4.     On April 12, 2017 (the "Petition Date"), the Debtors, Unilife Corporation ("Unilife"), together with its subsidiaries Unilife Medical Solutions, Inc. ("UMSI"), and Unilife Cross Farm, LLC ("Cross Farm"), each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this Bankruptcy Court (the "Chapter 11 Cases").  The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors remain in possession of their property and continue in the operation and management of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.     The Debtors have commenced these cases to implement a process to market and sell the Debtors' assets pursuant to section 363 of the Bankruptcy Code, or effectuating a restructuring of the Debtors' business.  The Debtors have concluded, in the exercise of their business judgment, and as fiduciaries for all of the Debtors' stakeholders that the best and only viable path to maximize the value of their business and to preserve jobs is to sell their business in connection with a 363 sale process.  Accordingly, the Debtors have filed a motion seeking Court approval to sell their businesses pursuant to 11 U.S.C. § 363 (a "363 Sale"), over a three month timeframe, in order to maximize and preserve value for the Debtors' estates.  While the Debtors

are pursuing a sale through a section 363 sale process, they will also continue to explore potential restructuring opportunities, including the transaction that was discussed among the Debtors, their principal secured creditors and a third party investor just prior to the commencement of these cases.

6.    Further information regarding the Debtors' business, background, capital structure, financial results, and the events leading up to their bankruptcy filings can be found in the *Declaration of John Ryan in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 5], which is incorporated herein by reference.

## RELIEF REQUESTED

7.    By this Motion, the Debtors seek entry of an order under sections 105 and 363(b) of the Bankruptcy Code, authorizing the Debtors to implement the proposed KEIP, the terms of which are attached to the Proposed Order, with respect to payments to four (4) key executives designed to incentivize such employees to work diligently with the Debtors, creditors, and all parties to the bankruptcy proceeding so that the Debtors are able to maximize recoveries to creditors through these Chapter 11 Cases.

8.    The key executives who are eligible for the incentive payments proposed under the KEIP are John Ryan (President and Chief Executive Officer); Ian Hanson (Senior Vice President and Chief Operating Officer); Stephanie Walters (Senior Vice President, General Counsel and Secretary); and Rick Bente (Vice President and General Manager of Advanced Drug Delivery Systems) (together, the "Eligible Employees").

9.    The Eligible Employees each hold critical operational, leadership and/or corporate management positions within the Debtors' business.  The Eligible Employees are responsible for, among other things, essential day-to-day and strategic business functions, executing the Debtors' business plan, leading and providing strategic direction to the Debtors' employees in their continued development of the technology underpinning the Debtors' business, implementing the

operational goals of the Debtors' Chapter 11 Cases, maintaining the Debtors' books and records, assisting the Debtors' bankruptcy counsel in preparing essential reporting documents, providing critical strategic and operational leadership in positioning the company for sale and/or restructuring, and responding to requests for diligence by potential purchasers of the Debtors' assets. Given their essential roles in the Debtors' business, the Eligible Employees are positioned to drive performance and the ultimate result of the sale of the Debtors' assets or the restructuring of their business.

10.    The KEIP is designed to provide the Eligible Employees with performance bonus payments in order to incentivize them to meet certain performance targets, and to maximize the value of the Debtors' estates for the benefit of their creditors and other stakeholders.

11.    The Eligible Employees shall be entitled to the incentive bonus provided for under the KEIP (the "Incentive Bonuses"), in the event that *all* of the following (collectively, the "Incentive Targets") are achieved:

    a.    All or substantially all of the Debtors' assets are sold in a process under section 363 of the Bankruptcy Code (a "Sale"), or a restructuring of the Debtors' business is achieved through a confirmed plan (a "Restructuring");

    b.    The Debtors comply with the approved budget, including permitted variances, as the approved budget may be amended; and

    c.    Operational Targets. The following Incentive Targets are collectively referred to as the "Operational Targets" and each, an "Operational Target").

        i.    Small Format Precision-Therapy Development:

            1.    Operational Target Deliverable: Completion of the Phase I Design History File consistent with Unilife's 21 C.F.R. 820.30 compliant Quality Management System for the Debtors' Small Format Precision Therapy drug delivery device.

            2.    Description: In order to lower overhead costs and to provide for simpler commercialization pathways for new customers, the Debtors are creating a universal small format container Precision-Therapy drug delivery device. This device will

4

typically deliver up to approximately 3 mL of a viscous large molecule biologic subcutaneously into human patients. This product will allow the Debtors to market a generalized delivery system to customers that do not wish to engage in substantive customization and allow for faster entry into clinical trials.

ii.   Large Format Precision-Therapy Development:

1.   Operational Target Deliverable:  Completion of Design Freeze Review for tooling suitability and release.

2.   Description:  Building on the testing and container development of their large format platform, the Debtors intend to expand their large platform Precision-Therapy portfolio by developing device sub-systems and performing universal system level verification on their platform device. This large format platform will typically be used to deliver therapies up to approximately 10 mL of a viscous large molecule biologic subcutaneously into human patients.

iii.  Flex-Mini Development:

1.   Operational Target Deliverable:  Completion of the Phase I Design History File consistent with Unlife's 21 C.F.R. 820.30 compliant Quality Management System for the Debtors' Flex-Mini drug delivery device.

2.   Description:  The Flex-Mini platform provides a unique opportunity to deliver small volumes of drug to patients with flexible use models. Continuing to deliver on key customer deliverables and defining the path to commercial deliverables will be critical for the success of the Flex-Mini platform. Phase I completion is a critical next step in advancing this device platform.

12.     In order to meet all of the Incentive Targets, critical contributions from each of the Eligible Employees -- each of whom has different specialized skill sets, responsibilities and knowledge -- will be required.

13.     The Incentive Bonuses will be paid in a lump sum cash payment as soon as practicable after the last of the Incentive Targets has been achieved, provided the Eligible Employee is employed by the Debtors on the date such Incentive Targets are achieved. For the

avoidance of doubt, each Eligible Employee is entitled to payment of the Incentive Bonus even if such Eligible Employee is rehired by a purchaser of the Debtors' assets.

14.     The Debtors have determined, in the exercise of their business judgment, that implementing the KEIP is essential to effectively and efficiently accomplish the proposed sale of the Debtors' assets or restructuring of their business.  The KEIP will help ensure that the Eligible Employees, who are essential to the Chapter 11 Cases, are properly incentivized to achieve the Debtors' operational and financial goals in order to maximize the value of the Debtors' estates. The Debtors respectfully submit that the KEIP will provide the necessary incentives to the Eligible Employees to promote the successful sale of the Debtors' assets or restructuring of their business, which will greatly benefit the Debtors' estates, creditors, and other parties in interest.

15.     Without proper incentives, the Debtors expect that the Eligible Employees will depart from their employment with Debtors during the pendency of the sale and/or restructuring process, to among other things, accept other employment opportunities.  In the event that any of the Eligible Employees depart during the sale and/or restructuring process, significant and/or substantially all of the value of the Debtors' business would be irretrievably lost.

16.     Prior to the Petition Date, the Debtors implemented significant reductions in force to cut their expenses and provide for the efficient operation of the Debtors' facilities while the Debtors' attempted to resolve their liquidity issues.  These reductions have resulted in the Debtors going from a workforce of approximately 210 at the beginning of fiscal year 2016[2] to approximately 76 as of the Petition Date.  This reduction in force has reduced expenses but has also significantly increased the work load and responsibilities of the Eligible Employees.

---

[2]  The Debtors operate on a basis of a fiscal year ending June 30.

17.    The Debtors have determined to pursue a sale of their assets or a restructuring of their business through a process designed to maximize value for the benefit to all of the Debtors' creditors and parties-in-interest in these cases. Each Eligible Employee is critical to the effort to stabilize and best position the Debtors to maximize the value of their business, and possess knowledge of the Debtors' ongoing business operations that must be preserved in order for the Debtors to efficiently administer these cases, achieve the Operational Targets, and successfully sell their assets or restructure their business. Each of the Eligible Employees, in addition to his or her enhanced regular duties, must spend substantial time and effort meeting the additional challenges and burdens of operating in Chapter 11, including achieving the Operational Targets, meeting with customers to convince them to continue to support the business through this process, meeting with potential investors or purchasers, providing information to various constituencies, and otherwise facilitating and encouraging the potential investors or purchasers' formulation of competitive bids – not to mention foregoing other more stable employment opportunities.

18.    Shortly before the Petition Date, the Debtors, in consultation with their advisors, and ROS Acquisition Offshore LP, the Debtors' pre-petition secured term loan lender and debtor-in-possession lender ("ROS"), developed a plan to incentivize the Eligible Employees to continue to work diligently and efficiently throughout the Chapter 11 process in order to secure the best possible transaction for the benefit of creditors and all parties in interest. The Incentive Targets were designed to create milestones that will take substantial effort by the Eligible Employees to achieve, and that will best position the Company to derive maximum value through a sale or restructuring.

19.    Meeting the Incentive Targets will be a considerable challenge for the Eligible Employees. This is not a case with a pre-ordained exit plan: there is no stalking horse bidder or

plan of reorganization on file.  Consummation of a Sale(s) or a Restructuring, operating within budget and meeting the Operational Targets under the facts and circumstances of these Chapter 11 Cases is uncertain and will take hard work.  See August 31, 2015 Hearing Tr. At pg. 65-66, *In re: Response Genetics, Inc.*, Case No. 15-11663 (LSS) (Bankr. D. Del.) (the Court entered an order approving the incentive plan, recognizing that "insiders will have a significant role to play to get a sale approved… it's not assured, at this point in time… that the company isn't a stable company … that there are open issues…)

20.    ROS proposed and has agreed to include the obligations under the KEIP in the "Carve-Out" to its collateral package, recognizing the importance of the contributions of the Eligible Employees to creating value in these proceedings, and has agreed to fund the payments through the DIP Financing.

21.    The Debtors' Eligible Employees are critical to efficiently and effectively operate the Debtors' business.  They need to be provided sufficient compensation to induce them to work diligently throughout the bankruptcy process toward maximizing the purchase price for the assets or the value of a restructuring transaction.  The success of the Debtors' efforts is dependent upon the support of its Eligible Employees as the Debtors continue to market their assets. It is crucial that the Debtors' Eligible Employees are appropriately and sufficiently compensated to maximize the financial performance of the Debtors and, to the largest extent possible, to maximize the likelihood of entering into a transaction that realizes the highest value for the Debtors' businesses and assets for each stakeholder. The Debtors believe that if the KEIP is not approved, at a minimum, the morale of these critical individuals will be impaired, and more likely these individuals will depart from their positions with Debtors.

22.     Certain of the Eligible Employees are a party to an executory employment agreement with the Debtors.  As a condition to receiving a payment under the KEIP, an Eligible Employee must execute a release in a form acceptable to the Debtors ("Release") and, in so doing, waive his or her right to separation payments, severance and salary continuation arrangements, and post-employment benefits, including any such rights provided in his or her employment agreement with the Debtors.  Notwithstanding the foregoing, the employment agreements with the Eligible Employees are not being rejected at this time and the Debtors do not presently intend to reject such employment agreements, as modified by the Release.

23.     The use of plans such as that which is being proposed by the Debtors to properly incentivize their Eligible Employees is common practice in Chapter 11 Cases and is justified here given the ongoing marketing process and associated uncertainty related thereto.

24.     The foregoing description of the KEIP is intended only as a summary, and is qualified in all respects by reference to the actual terms of the KEIP as set forth on the KEIP Term Sheet annexed to the Proposed Order.  To the extent the foregoing is inconsistent with the terms of the KEIP, the KEIP Term Sheet controls.

## BASIS FOR RELIEF REQUESTED

25.     The Debtors have determined, in the exercise of their business judgment, that implementing the KEIP is essential to effectively and efficiently accomplish their objectives in these cases.  The KEIP will help ensure that the Eligible Employees, who are essential to the Debtors' Chapter 11 Cases, are properly incentivized to achieve the Debtors' operational and financial goals in order to maximize the value of the Debtors' estates.  The Debtors respectfully submit that the KEIP will provide the necessary incentives to the Eligible Employees to promote

the successful sale of the Debtors' assets or restructuring of the Debtors' business, which will greatly benefit the Debtors' estates, creditors, and other parties in interest.

A.    Implementation of the Proposed KEIP Is Warranted Under Section 363(b)(1) as an Appropriate Exercise of the Debtors' Business Judgment

26.    "The [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate," 11 U.S.C. § 363(b)(1), as long as the debtor can "show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *see also Culp v. Stanziale (In re Culp)*, 550 B.R. 683, 697 (D. Del. 2015). Where there is a reasonable basis for a debtor's business decisions, courts generally do not contradict the proposed course of conduct. *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task."). The reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment. *In re Global Home Prods.*, LLC, 369 B.R. 778, 784 (Bankr. D. Del. 2007) (*citing In re U.S. Airways, Inc.*, 329 B.R. 793, 795 (Bankr. E.D. Va. 2005).

27. Indeed, Judge Walrath, in the *Nobex* case, stated that:

> [Section] (c)(3) was meant to provide a standard, albeit not as clear, for any other transfers or obligations outside of the ordinary course of business … I read (c)(3) to be the catch-all and the standard under (c)(3) for any transfers or obligations made outside of the ordinary course of business are those that are justified by the facts and circumstances of the case… I find it quite frankly nothing more than a reiteration of the standard under 363… under which courts had previously authorized transfers outside of the ordinary course of business and that [are], based on the business judgment of the debtor…

January 12, 2006 Hearing Tr. At 86-87, *In re Nobex Corp.*, Case No. 05-20050 (MFW) (Bankr. D. Del.) (an order approving the management incentive plan was entered January 20, 2006.)

28.     The implementation of the proposed KEIP is a sound exercise of the Debtors' business judgment and, as such, should be approved under section 363(b).  The Eligible Employees are essential to the Debtors' operational and financial performance and their ability to achieve a profitable sale of their assets or restructuring of their business.  In addition to their usual responsibilities, including leading the Debtors' businesses and managing employee, customer, and vendor relationships, the Eligible Employees have taken on considerable additional responsibilities in these cases.   The Eligible Employees have not been offered incentives as compensation for these enhanced responsibilities, as would be consistent with market practice.  In addition, the KEIP establishes well-defined and specific goals for the Eligible Employees that, if achieved, will have a meaningful impact on the Debtors' sale and restructuring efforts and therefore on the funds available to the Debtors' creditors.

29.     The KEIP provides for an average payment to the Eligible Employees in the amount of $256,875, and the total payment equates to approximately one-half of one percent of the Debtors' total liabilities and less than 1.2% of total assets at book value.  The Incentive Bonuses under the KEIP are reasonable and appropriate in light of the size of the Debtors' estates and the benefit to be gained from a successful sale or restructuring, and are consistent with the payments approved under KEIP in other similar size cases in this District.

30.     Moreover, ROS has agreed that the Incentive Bonuses will be paid from a carve-out of and from its collateral, so unsecured creditors are not affected by the KEIP.  As result, the

Debtors, in their sound business judgment, believe that the implementation of the KEIP is well justified under the circumstances and will benefit all parties in interest in these Chapter 11 Cases.

      B.      The KEIP Provides Incentives, Not Retention or Severance Payments, and Therefore Sections 503(c)(1) and 503(c)(2) Do Not Apply

      31.    Bankruptcy Code section 503(c)(i) and (c)(2) govern retention and severance payments to insiders, and therefore do not apply to performance-based incentive plans like the KEIP. *See, e.g., In re Alpha Natural Res., Inc.*, 546 B.R. 348, 356 (Bankr. E.D. Va. 2016) ("On its face, § 503(c)(1) does not apply to a KEIP because the payments thereunder are incentive and not purely retentive."); *In re Nobex Corp.*, 2006 Bankr. LEXIS 417, at *8 (Bankr. D. Del. Jan. 19, 2006) ("The sale-related incentive pay to [senior management] is not governed by sections 503(c)(1) or 503(c)(2) of the Bankruptcy Code.").

      32.    While the KEIP was not designed to retain the Eligible Employees, the fact that it may incidentally encourage the Eligible Employees to remain with the Debtors throughout these Chapter 11 Cases should not bar its implementation; any successful incentive program would be expected to have this indirect benefit. *See, e.g., In re Global Home Prods., LLC*, 369 B.R. at 786 ("The fact, as Debtors pointed out, that all compensation has a retention element does not reduce the Court's conviction that Debtors' primary goal [is] to create value by motivating performance. All companies seek to retain employees they value by fairly compensating them."). The primary purpose of the KEIP is to maximize value for the benefit of the Debtors' estates.

      33.    The KEIP is neither a retention plan nor a severance plan. Instead, the KEIP is a performance-based plan that provides for targeted payments to Eligible Employees contingent upon meeting five challenging milestones. The purpose of the KEIP is to motivate the Eligible Employees to work hard in order to achieve a Sale or Restructuring and thereby receive the

contemplated Incentive Bonuses. The KEIP does not have an impermissible retention or severance component. Therefore, sections 503(c)(1) and (2) are not applicable to the KEIP.

      C.      <u>Approval of the Proposed KEIP Is Justified by the Facts and Circumstances of these Chapter 11 Cases and Therefore Satisfies Section 503(c)(3)</u>

      34.      Section 503(c)(3) of the Bankruptcy Code prohibits transfers or obligations outside the ordinary course of business that are "not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition." 11. U.S.C. § 503(c)(3). Courts use the business judgment standard in analyzing transfers and obligations under section 503(c)(3). *See, e.g., In re Alpha Natural Res., Inc.*, 546 B.R. at 357-58 (*citing In re Borders Grp., Inc.*, 453 B.R. 459, 474 (Bankr. S.D.N.Y. 2011) ("[T]he legal standard under § 363(b) is no different than section 503(c)(3) . . . ."); *In re Global Home Prods., LLC*, 369 B.R. at 786 (applying the business judgment test to an incentive plan).

      35.      Courts assessing a debtor's business judgment relating to an incentive program under section 503(c)(3) look at six factors: (i) whether a reasonable relationship existed between the proposed plan and the desired results; (ii) whether the cost of the plan was reasonable in light of the overall facts of the case; (iii) whether the scope of the plan was fair and reasonable; (iv) whether the plan was consistent with industry standards; (v) whether the debtor had put forth sufficient due diligence efforts in formulating the plan; and (vi) whether the debtor received sufficient independent counsel in performing any due diligence and formulating the plan. *In re Dana Corp.*, 358 B.R. 567, 576-77 (Bankr. S.D.N.Y. 2006). Moreover, the Court in *Dana Corp.* noted that courts generally take a "holistic" view of compensation packages. *Id.* at 571.

      36.      The KEIP satisfies each of the *Dana* factors. It was designed to incentivize the Eligible Employees for their significant efforts in these Chapter 11 Cases, to ensure that key

management employees continue to focus their full effort and attention on the Debtors' day-to-day operations and affairs, including their leadership of the sale and/or restructuring process, and to fairly compensate the Eligible Employees for the increased demands placed upon them in connection with these Chapter 11 Cases and in meeting pre-defined incentive milestones, thereby maximizing the value of the Debtors' estates for the benefit of all parties in interest.  Payments under the KEIP will be awarded only if all Incentive Targets have been achieved and only upon the successful closing of a sale or sales of the Debtors' assets or a restructuring of the Debtors' business, and, therefore, are directly linked to results.  As described above, the results that the KEIP rewards are substantial and important to the success of the Debtors' Sale/Restructuring process.  Moreover, the Debtors consulted with their advisors and reviewed other KEIPs approved by Courts in this District in similar cases and determined that the amount of the Incentive Bonuses is consistent with the amounts paid in similar plans approved in other middle market cases in the District in terms of amount paid, amount paid per employee, amount as percentage of asset value, and amount as percentage of total liabilities.

D.    Authorization and Approval of the Proposed KEIP Is Appropriate Under Section 105(a)

37.    Bankruptcy courts may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Courts use their section 105(a) powers to authorize payments essential to the operation of the debtor's business and maximizing the value of the estate. *In re Just for Feet, Inc.*, 242 B.R. 821, 824-26 (D. Del. 1999) (debtors may make payments that are essential to the continued operation of the business while in chapter 11); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payments to employees on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a

flexible mechanism that will permit … payment of creditors in full or at least proportionately"). Here, approval of the KEIP is an appropriate use of the Court's section 105(a) powers, because the KEIP is necessary to the continued operation of the Debtors' business and to the maximization of the value of the Debtors' estates for all stakeholders.

## NOTICE

38.     The Debtors will provide notice of this Motion on the date hereof via first class mail to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for ROS; (iii) counsel to Amgen; (iv) any party that has requested notice under Bankruptcy Rule 2002(i); and (v) the 20 largest unsecured creditors in these cases.  The Debtors submit that no other or further notice is necessary under the circumstances.

WHEREFORE, for the reasons set forth herein and in the Declaration, the Debtors respectfully request entry of the Order granting the relief requested herein and such other and further relief as is just and proper.

Dated: April 25, 2017

COZEN O'CONNOR

Mark E. Felger (No. 3919)
Keith L. Kleinman (No. 5693)
1201 N. Market St., Ste. 1001
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
mfelgerf@cozen.com
kkleinman@cozen.com

*Proposed Counsel for the Debtors and
Debtors in Possession*