# Exhibit B

**(Declaration)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UNILIFE CORPORATION, et al.,[1] | ) | Case No. 17-10805 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**DECLARATION OF MARY KATE WOLD, MEMBER OF COMPENSATION
COMMITTEE AND CHAIR OF THE BOARD OF DIRECTORS
OF UNILIFE CORPORATION IN SUPPORT OF DEBTORS' MOTION
FOR APPROVAL OF THE DEBTORS' KEY EMPLOYEE INCENTIVE PLAN**

Pursuant to 28 U.S.C. § 1746, I, Mary Kate Wold, hereby submit this declaration (the "Declaration") under penalty of perjury:

1. I am a Member of the Compensation Committee and the Chair of the Board of Directors of Unilife Corporation, one of the above-captioned debtors and debtors-in-possession, and the parent company of the other two above-captioned debtors and debtors-in-possession (collectively, the "Debtors"). In such capacity, I am intimately familiar with the Debtors' business, day-to-day operations and financial affairs.

2. I am duly authorized to execute this Declaration (this "Declaration") on behalf of the Debtors in support of the Debtors' Motion for Approval of the Debtor's Key Employee Incentive Plan (the "Motion"), which seeks approval of the Debtors' key employee incentive plan, the terms of which are annexed to the Proposed Order as Exhibit 1 (the "Plan"), a program offering certain payments to compensate four (4) eligible employees who are critical to the Debtors' successful marketing of their assets as a going concern and resolution of these Chapter 11 Cases.

---

[1] The Debtors in these Chapter 11 Cases are the following entities (the last four digits of each Debtor's respective federal tax identification number, if any, follow in parentheses): Unilife Corporation (9354), Unilife Medical Solutions, Inc. (9944), and Unilife Cross Farm LLC (3994). The Debtors' corporate headquarters and the mailing address for each Debtor is 250 Cross Farm Lane, York, PA 17406.

3. Except as otherwise indicated, all facts set forth herein are based upon my personal knowledge, information learned from my review of relevant documents, or information supplied to me by the Debtors' management. If called upon to testify, I could and would testify competently to the facts set forth herein.

4. I have reviewed the Motion and the facts contained therein are true and accurate. The Debtors' successful resolution of these cases and the maximization of value for the Debtors' stakeholders contemplates a sale of the Debtors' assets as a going concern (a "Sale") or a restructuring of the Debtors' business (a "Restructuring").

5. The Debtors currently employ certain individuals that are critical to a successful Sale or Restructuring. These key employees are John Ryan, Ian Hanson, Stephanie Walters, and Rick Bente (collectively, the "Eligible Employees"). By separate motion, the Debtors are seeking Court approval of a separate Key Employee Retention Program for all of the Debtors' non-insider employees.

6. Each of the Eligible Employees possesses significant specialized knowledge regarding the Debtors' operations and, as a result of several reductions in the Debtors' workforce, the initiation of these Chapter 11 Cases and the marketing efforts to effectuate a Sale or Restructuring, the responsibilities and the burden on the time and resources of these Eligible Employees has significantly increased.

7. In order to maximize the number of interested parties submitting proposals for the Debtors' assets and the value realized for all stakeholders, the Debtors are relying heavily on maximum time and effort being put forth by the Eligible Employees, who are all critical to the Sale and Restructuring process. The Incentive Targets, including the Operational Targets, which are milestones in the KEIP, are designed to enhance the value of the Debtors. Providing a

significant economic incentive tied to the success of the process represents sound business judgment, in my view and the view of the Compensation Committee.[2]

8. The KEIP is designed to provide the Eligible Employees with bonus payments in order to incentivize them to meet certain performance targets, in order to maximize the value of the Debtors' estates for the benefit of their creditors and other stakeholders.

9. In order for any incentive bonus to be paid under the KEIP, *all* of the following (collectively, the "Incentive Targets") must be achieved:

    a. All or substantially all of the Debtors' assets must be sold in a process under section 363 of the Bankruptcy Code (a "Sale"), or a restructuring of the Debtors' must be achieved through a confirmed plan (a "Restructuring");

    b. The Debtors must stay within the approved budget, including permitted variances, as the approved budget may be amended; and

    c. Operational Targets. The following Incentive Targets are collectively referred to as the "Operational Targets" and each, an "Operational Target")

        i. Small Format Precision-Therapy Development:

            1. Operational Target Deliverable: Completion of the Phase I Design History File consistent with Unilife's 21 C.F.R. 820.30 compliant Quality Management System for the Debtors' Small Format Precision Therapy drug delivery device.

            2. Description: In order to lower overhead costs and to provide for simpler commercialization pathways for new customers, the Debtors are creating a universal small format container Precision-Therapy drug delivery device. This device will typically deliver up to approximately 3 mL of a viscous large molecule biologic subcutaneously into human patients. This product will allow the Debtors to market a generalized delivery system to customers that do not wish to engage in

---

[2] The Compensation Committee of Unilife met on April 20, 2017 and unanimously approved the terms of the KEIP.

3

        substantive customization and allow for faster entry into clinical trials.

  ii. <u>Large Format Precision-Therapy Development</u>:

    1. <u>Operational Target Deliverable</u>: Completion of Design Freeze Review for tooling suitability and release.

    2. <u>Description</u>: Building on the testing and container development of their large format platform, the Debtors intend to expand their large platform Precision-Therapy portfolio by developing device sub-systems and performing universal system level verification on their platform device. This large format platform will typically be used to deliver therapies up to approximately 10 mL of a viscous large molecule biologic subcutaneously into human patients.

  iii. <u>Flex-Mini Development</u>:

    1. <u>Operational Target Deliverable</u>: Completion of the Phase I Design History File consistent with Unlife's 21 C.F.R. 820.30 compliant Quality Management System for the Debtors' Flex-Mini drug delivery device.

    2. <u>Description</u>: The Flex-Mini platform provides a unique opportunity to deliver small volumes of drug to patients with flexible use models. Continuing to deliver on key customer deliverables and defining the path to commercial deliverables will be critical for the success of the Flex-Mini platform. Phase I completion is a critical next step in advancing this device platform.

10. Moreover, as a condition to receiving a payment under the KEIP, an Eligible Employee must execute a release in a form acceptable to the Debtors and, in so doing, waive his or her right to separation payments, severance and salary continuation arrangements, and post-employment benefits, including any such rights provided in his or her employment agreement the Debtors.

11. The Debtors have determined, in the exercise of their business judgment, that implementing the KEIP is essential to effectively and efficiently accomplish the proposed Sale or

4

Restructuring. The Incentive Targets are designed to enhance the value of the Debtors' estates, whether that value is realized through a Sale or a Restructuring. The KEIP will help ensure that the Eligible Employees, who are essential to the Debtors' Chapter 11 Cases, are properly incentivized to achieve the Debtors' operational and financial goals and maximize the value of the Debtors' estates.

12. Without proper incentives, the Eligible Employees may accept other employment opportunities, value may be lost. Prior to the Petition Date, the Debtors implemented significant reductions in force to reduce their expenses and provide for the efficient operation of the Debtors facilities while the Debtors attempted to resolve their liquidity issues. These reductions have resulted in the Debtors going from a workforce of over 200 people at the beginning of fiscal year 2016[3] to approximately 76 as of the Petition Date. This reduction in force has cut expenses but has also significantly increased the work load and responsibilities of the Eligible Employees.

13. Shortly before the Petition Date, the Debtors, in consultation with their advisors and ROS Acquisition Offshore LP, the Debtors' pre-petition secured term loan lender and debtor-in-possession lender ("ROS"), developed a plan to incentivize the Eligible Employees to continue to work diligently and efficiently throughout the critical Sales/Restructuring process in order to secure the best possible value for the company for the benefit of creditors and all parties in interest. The Debtors, through their advisors, have reviewed plans approved in other middle market cases of a similar size in this District, and believe that the KEIP is well within the range of other KEIPS approved under similar circumstances, and believe that approval of the KEIP is reasonable and prudent, under the circumstances of these cases.

---

[3] The Debtors operate on a basis of a fiscal year ending June 30.

5

14. ROS proposed and has agreed to include the obligations under the KEIP in the "Carve-Out" to its collateral package, recognizing the importance of the contributions of the Eligible Employees to creating value in these proceedings, and has agreed to fund the payments through the DIP Financing.

15. The Debtors' Eligible Employees are critical to efficiently and effectively operate the Debtors' business. They need to be provided with sufficient compensation to induce them to work diligently throughout the bankruptcy process toward maximizing the value of the business, with very substantial and challenging additional duties as described above and in the Motion. The success of the Debtors' efforts is dependent upon the support of the Eligible Employees as the Debtors continue to market their assets and develop a value-maximizing exit from Chapter 11. It is crucial that the Debtors' Eligible Employees are appropriately compensated to maximize the financial performance of the Debtors and, to the largest extent possible, to maximize the likelihood of selling the Debtors' assets or restructuring the Debtors' business for the highest possible value.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 25, 2017         By:   /s/ Mary Kate Wold
                                    Name: Mary Kate Wold
                                    Title: Member of the Compensation Committee and
                                    Chair of the Board of Directors