IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UNILIFE CORPORATION, *et al.*,[1] | ) | Case No. 17-10805 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related Docket No. 16** |
| | ) | |

**ORDER (A) APPROVING BIDDING PROCEDURES
AND BID PROTECTIONS IN CONNECTION WITH THE SALE
OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) APPROVING THE
FORM AND MANNER OF NOTICE THEREOF, (C) SCHEDULING AN AUCTION
AND A SALE HEARING, (D) APPROVING PROCEDURES FOR THE ASSUMPTION
AND ASSIGNMENT OF CONTRACTS, AND (E) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order (this "Order") (a) authorizing and approving the bidding procedures attached hereto as Exhibit "1" (the "Bidding Procedures") in connection with the sale of substantially all of the Debtors' assets (the "Assets"), (b) approving the form and manner of notice attached as Exhibit "2" to the Bidding Procedures Order (the "Sale Notice") of an auction (the "Auction") and sale hearing (the "Sale Hearing") with respect to the sale of the Assets free and clear of liens, claims, encumbrances, and other interests (the "Sale"), (c) scheduling the Sale Hearing, (d) approving procedures for the possible assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale (collectively, the

---

[1] The Debtors in these chapter 11 cases are the following entities (the last four digits of each Debtor's respective federal tax identification number, if any, follow in parentheses): Unilife Corporation ("Unilife") (9354), Unilife Medical Solutions, Inc. ("UMSI") (9944), and Unilife Cross Farm LLC ("Cross Farm") (3994). The Debtors' corporate headquarters and the mailing address for each Debtor is 250 Cross Farm Lane, York, PA 17406.

[2] Capitalized terms used as defined terms herein but not otherwise defined shall have the meanings ascribed to them in the Motion. In the event there is a conflict between this Order and the Motion, this Order shall control and govern.

"Contracts") and (e) authorizing the Debtors, in the exercise of their reasonable business judgment to (i) enter into a Stalking Horse agreement (the "Stalking Horse Agreement") if the Debtors believe that such an agreement will further the purposes of the Auction by, among other things, enticing value-maximizing bids, and (ii) offer a Stalking Horse bidder (the "Stalking Horse Bidder") any or all of the following (A) the Break-Up Fee (as defined below) in an amount to be determined by the Debtors, not to exceed 3 percent of the total purchase price offered by the Stalking Horse Bidder in the Stalking Horse Agreement, (B) the Expense Reimbursement (as defined below) of the Stalking Horse Bidder's reasonable and actual fees and expenses incurred as the Stalking Horse Bidder, subject to a cap of $250,000, and (C) initial overbid protection in an amount to be determined by the Debtors, to be announced prior to the Auction (the "Initial Overbid" and, together with the Break-Up Fee and the Expense Reimbursement, the "Bid Protections")[3]; this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); this Court having found that it may enter a final order consistent with Article III of the United States Constitution; this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. § 1408; this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; this Court having reviewed the Motion and having heard the statements

---

[3] Subsequent to the filing of the Motion, and following consultations with the United States Trustee and ROS, the Debtors have agreed to seek subsequent expedited Court approval of any Bid Protections in the event that a Stalking Horse is selected.

in support of the relief requested therein at a hearing before this Court (the "Hearing"); this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, THE COURT FINDS THAT:

A.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, date February 29, 2012.

C.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors have confirmed their consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by this Court in connection with this Motion, to the extent that it were to be later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

D.  Venue is proper in this District and in this Court pursuant to 28 U.S.C. § 1408.

E.  The bases for the relief requested in this Motion are sections 105(a), 363, 365, 503(b), and 507(a)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

"Bankruptcy Code"), Bankruptcy Rules 2002, 6004, and 6006(a), 9007 and 9014, and Local Rules 2002-1, 6004-1, and 9013-1(m).

F.    As evidenced by the certificates of service filed on behalf of the Debtors in these cases, notice of the Motion has been given to: (a) the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) counsel to ROS Acquisition Offshore LP ("ROS") the Debtors' prepetition and postpetition secured lender; (c) Amgen, Inc. ("Amgen"), the holder of certain prepetition senior secured convertible notes; (d) First National Bank, the holder of a mortgage of certain real property owned by Cross Farm; (e) the Commonwealth of Pennsylvania Financing Authority, the mortgagee of certain real property owned by Cross Farm; (f) counterparties to the Contracts (the "Contract Counterparties"); (g) all parties who have expressed to the Debtors within the last year a written interest in the Assets; (h) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (i) the Internal Revenue Service; (j) all other applicable state and local taxing authorities; (k) all the Debtors' other creditors; (l) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (m) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

G.    The Debtors have articulated good and sufficient reasons for this Court to (a) approve the Bidding Procedures; (b) schedule the Auction and Sale Hearing and approve the manner of notice of the Auction and Sale Hearing; (c) approve procedures for the assumption and assignment of the Contracts, including notice of the proposed cure amounts; and (d) authorize the Debtors to enter into a Stalking Horse Agreement and, subject to further Court approval, to extend to a Stalking Horse Bidder the Bid Protections in the exercise of the Debtors' reasonable business judgment.

H.  The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the value of the Assets for the benefit of the Debtors and their estates.

I.  ***Assumption and Assignment Procedures.***  The Motion, this Order, and the assumption and assignment procedures (the "Assignment Procedures") set forth herein are reasonably calculated to provide counterparties to any Contracts to be assumed by the Debtors and assigned to the Successful Bidder (as defined in the Bidding Procedures) with proper notice of the intended assumption and assignment of their Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

J.  ***Sale Notice.***  The Sale Notice is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation: (a) the date, time, and place of the Auction (if one is held); (b) the Bidding Procedures; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) reasonably specific identification of the Assets to be sold; (e) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (collectively, "Interests"), with all such Interests attaching with the same validity and priority to the Sale proceeds; and (f) notice of the proposed assumption and assignment of Contracts to the Successful Bidder. No other or further notice of the Sale shall be required.

**IT IS HEREBY ORDERED THAT:**

1.  The Motion is **GRANTED** as set forth herein.

2.  All objections, if any, to the relief requested in the Motion with respect to the Bidding Procedures that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

LEGAL\30197326\2

3. The Bidding Procedures, in the form attached hereto as Exhibit "1", are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to the proposed sale of the Assets. Any party desiring to bid on the asset shall comply with the Bidding Procedures. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

I. **Break-Up Fee and Expense Reimbursement**

4. The Debtors are authorized, subject to the reasonable exercise of their business judgment, to designate an agreement a "Stalking Horse Agreement" and enter into a Stalking Horse Agreement with a Qualified Bidder (as defined in the Bidding Procedures) (the "Stalking Horse Bidder") prior to the Auction. The Debtors are further authorized and permitted to seek Court approval of any or all of the following bid protections at an expedited hearing, to take place following at least three (3) days' notice to ROS, Amgen, the office of the United States Trustee, any official committee of unsecured creditors appointed in these cases, and all parties having filed and served upon the Debtors a notice of appearance and demand for service of papers, by overnight or electronic mail:

(a) a break-up fee (the "Break-Up Fee") in an amount to be determined by the Debtors, not to exceed 3 percent of the total purchase price offered by the Stalking Horse Bidder in the Stalking Horse Agreement; and

(b) reimbursement of the Stalking Horse Bidder's reasonable and actual fees and expenses incurred as the Stalking Horse Bidder up to $250,000 (the "Expense Reimbursement").

If no objections are received during the three-day notice period described above, then counsel for the Debtors may file a certification of counsel and the Bid Protections may be approved without a hearing. If an objection is timely filed and received, then a hearing may be scheduled on the first available date following two (2) business days' notice to the objecting party.

## II. The Auction

5. As further described in the Bidding Procedures, if a Qualified Bid (as defined in the Bidding Procedures), other than the Credit Bid (as defined below), is received by the Bid Deadline (as defined in the Bidding Procedures), the Debtors will conduct the Auction at 10:00 a.m. (prevailing Eastern Time) on June 9, 2017, at the offices of the Debtors' proposed counsel, Cozen O'Connor, 1201 North Market Street, Suite 1001 Wilmington, Delaware 19801, or at such later time on such day or at such other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids, if a Qualified Bid is timely received.

6. If the Debtors do not receive a Qualified Bid (other than a Credit Bid); (a) the Debtors may cancel the Auction; and (b) any Credit Bid may be deemed by the Debtors to be the Successful Bid for the Assets; and (c) the Debtors shall be authorized to seek approval of any Credit Bid as the Successful Bid at the Sale Hearing.

7. If the Debtors receive a Qualified Bid (in addition to any Credit Bid), then the Debtors shall conduct the Auction in accordance with the Bidding Procedures.

8. Pursuant to Local Rule 6004-1(c)(ii): (a) each bidder participating at the Auction shall be required to confirm that it is not engaged in any collusion with respect to the bidding, the Auction, or the Sale, as set forth in the Bidding Procedures; (b) the Auction shall be conducted openly; and (c) the Auction shall be transcribed or videotaped.

9. ROS and Amgen shall each be deemed to be a Qualified Bidder and are not required to make any Good Faith Deposit in connection with the Credit Bid portion of their respective bids. To the extent any credit bid is submitted that also includes a cash component, such credit bidder shall be required to submit a deposit of 10% of the cash component of its bid as a Good Faith Deposit. ROS and Amgen may each participate in the Auction and may each credit bid in respect

7

of its respective collateral at any time, and from time-to-time, up to the conclusion of the Auction, in either's sole and absolute discretion, any portion and up to the entire amount its respective secured claims, including, without limitation, both its prepetition claims and in the case of ROS, all obligations under the DIP Orders (as defined below), at any time on any individual Asset or portion of the Assets constituting its respective collateral (the "Credit Bid"). Upon exercise of a Credit Bid, neither ROS nor Amgen shall be required to take title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), or be deemed to have taken title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), any individual Asset, portion of the Assets, or all of the Assets that are the subject of such Credit Bid, and ROS and Amgen shall each have the right to designate any person or entity in either's sole and absolute discretion that shall take title to the individual Asset, portion of the Assets, or all of the Assets that are the subject of such Credit Bid.

10. The Stalking Horse Bidder, if any, shall have the right (including as part of any Overbid) to credit bid all or a portion of its Bid Protections (if any) pursuant to section 363(k) of the Bankruptcy Code, provided such Bid Protections have been approved by the Court. Holders of "Permitted Liens" (as defined in the DIP Order, shall have the right to Credit Bid as pursuant to Section 363(k) of the Bankruptcy Code.

11. In the event of a competing Qualified Bid, all Qualified Bidders will be entitled, but not obligated, to submit Overbids

12. The Debtors may, in the reasonable exercise of their business judgment, (a) determine which Qualified Bid (including any Credit Bid) is the highest or otherwise best offer; (b) reject at any time before the entry of the Sale Order any Bid (other than any Credit Bid) that, in the discretion of the Debtors, is (i) inadequate or insufficient, (ii) not in conformity with the

requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interest of the Debtors' estates and their creditors; (c) at or before the conclusion of the Auction, impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interest of the Debtors' estates; and (d) prior to the entry of the Sale Order, re-open the Auction to consider further Bids.

13. No person or entity submitting a bid, other than the Stalking Horse Bidder, if any and to the extent Bid Protections are hereafter approved, shall be entitled to any expense reimbursement, breakup fee, topping or termination fee, or other similar fee or payment, and by submitting a Bid, such person or entity is deemed to have waived its right to request, or file with this Court any request for, expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

### III. Assumption and Assignment Notices & Procedures

14. As soon practicable, the Debtors shall serve on all non-Debtor counterparties (each a "Contract Counterparty" and, together, the "Contract Counterparties") to any Contract (the "Cure and Possible Assumption and Assignment Notice Parties") that may possibly be assumed by the Debtors and assigned to the Successful Bidder, which notice shall be substantially in the form attached hereto as Exhibit "3" (a "Cure and Possible Assumption and Assignment Notice"), setting forth the Debtors' calculation of the cure amount, if any, that would be due and owing to such Contract Counterparty if the Debtors decided to assume or assume and assign such executory contract or unexpired lease, and alerting such Contract Counterparty that its Contract may possibly be assumed and assigned to the Successful Bidder.

9

15. The presence of a Contract on the Cure and Possible Assumption and Assignment Notice does not constitute an admission that such Contract is an executory contract or unexpired lease or a commitment to assume or assign such Contract, and the presence of a Contract on any notice shall not prevent the Debtors from subsequently withdrawing such request for assumption or rejecting such Contract at any time before such Contract is actually assumed and assigned pursuant to the Sale Order.

16. ~~As soon as reasonably practicable after the Bid Deadline~~ *On or before May 25, 2017*, the Debtors shall file with the Court and serve on the Cure and Possible Assumption and Assignment Notice Parties who are parties to a Contract to be assumed and assigned a further notice substantially in the form attached hereto as Exhibit "4" (the "Assumption Notice") identifying all Qualified Bidders, each of whom will be permitted to participate in the Auction, stating which Contracts may be assumed and assigned, and providing such parties with the Qualified Bidders' assurance of future performance.

17. Any Contract Counterparty that objects to the cure amount set forth on the Cure and Possible Assumption and Assignment Notice or to the possible assumption and assignment of its executory contract or unexpired lease must file an objection with the Bankruptcy Court (a "Contract Objection") on or before 4:00 p.m. (prevailing Eastern Time) *June 5, 2017* ~~on the day that is fourteen (14) calendar days after the service of the Cure and Possible Assumption and Assignment Notice~~, which Contract Objection must also be served on (i) proposed counsel for the Debtors, Cozen O'Connor, 1201 North Market Street, Suite 1001 Wilmington, Delaware 19801 Attn: Mark E. Felger (mfelger@cozen.com) and Cozen O'Connor, 277 Park Avenue, New York, NY 10172 Attn: Frederick E. Schmidt, Jr. (eschmidt@cozen.com); (ii) counsel to ROS, Pachulski Stang Ziehl & Jones, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067, Attn.: Jeffrey H. Davidson (jdavidson@pszjlaw.com) and Pachulski Stang Ziehl & Jones, 150 California Street, 15th Floor,

10

San Francisco, CA 94111-4500, Attn: Henry C. Kevane (hkevane@pszjlaw.com); (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2008 – Lockbox #35, Wilmington, DE 19801, Attn: Mark Kenney (Mark.Kenney@usdoj.gov); and (iv) the Clerk of the Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, DE 19801. If a Contract Counterparty does not timely file and serve a Contract Objection, that party will be forever barred from objecting to (a) the Debtors' proposed cure amount, or (b) the assumption and assignment of that party's executory contract or unexpired lease to the Successful Bidder. Where a Contract Counterparty to an Assigned Contract files a timely Contract Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or objecting to the possible assumption and assignment of that Contract Counterparty's executory contract or unexpired lease, and the parties are unable to consensually resolve the dispute, the amount to be paid under section 365 of the Bankruptcy Code (if any) or, as the case may be, the Debtors' ability to assume and assign the executory contract or unexpired lease to the Successful Bidder will be determined at the Sale Hearing.

## IV.     **Notice of the Sale Process**

18.    The Sale Notice, the Cure and Possible Assumption and Assignment Notice, and the Assumption Notice, in substantially the forms as annexed to this Order as Exhibit 2, Exhibit 3, and Exhibit 4, respectively, and the Creditor Notice and Bidding Procedures Notice, in substantially the forms as annexed to the Motion as Exhibit C and Exhibit D, respectively, are hereby approved.

19.    Within two (2) business days after the entry of this Order, the Debtors (or their agents) shall serve the Sale Notice by first-class mail upon: (a) the U.S. Trustee; (b) counsel to

ROS; (c) the Contract Counterparties; (d) all parties who have expressed to the Debtors, within the last year, a written interest in the Assets; (e) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (f) the Internal Revenue Service; (g) all applicable state and local taxing authorities; (h) all of the Debtors' other creditors; (i) each governmental agency, if any, that is an interested party with respect to the Sale and transactions proposed thereunder; and (j) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

20. In addition, the Debtors are authorized, but not directed, to publish a brief summary of the Bidding Procedures Notice in *The Wall Street Journal (International Edition)*, or such other publication that the Debtors believe appropriate.

21. Within two (2) business days after entry of this Order, the Debtors (or their agents) shall serve the Creditor Notice on all of the parties set forth on the Debtors' creditor matrix who were not served with the Sale Notice.

V. **The Sale Hearing**

22. The Sale Hearing will be conducted on June 12, 2017 at 10:00 a.m. (prevailing Eastern Time). The Debtors will seek entry of an order of the Court at the Sale Hearing approving and authorizing the sale of the Assets to the Successful Bidder. Upon entry of this Order, the Debtors are authorized to perform any obligation intended to be performed prior to the Sale Hearing or entry of the Sale Order with respect thereto. The Sale Hearing may be continued from time to time without further notice other than such announcement being made in open court or a notice of adjournment filed with the Court and served on the Notice Parties.

## VI. Objections to the Sale

23. Objections, if any, to the relief requested in the Motion (except for any objection that arises out of the conduct of the Auction) must: (a) be in writing and filed with the Court no later than 4:00 p.m. (prevailing Eastern Time) on June 5, 2017; and (b) be served so that it is actually received no later than 4:00 p.m. (prevailing Eastern Time) on June 5, 2017 by on (i) proposed counsel for the Debtors, Cozen O'Connor, 1201 North Market Street, Suite 1001, Wilmington, Delaware 19801 Attn: Mark E. Felger (mfelger@cozen.com) and Cozen O'Connor, 277 Park Avenue, New York, NY 10172 Attn: Frederick E. Schmidt, Jr. (eschmidt@cozen.com) (ii) counsel to ROS, Pachulski Stang Ziehl & Jones, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067, Attn.: Jeffrey H. Davidson (jdavidson@pszjlaw.com), and Pachulski Stang Ziehl & Jones, 150 California Street, 15th Floor, San Francisco, CA 94111-4500, Attn: Henry C. Kevane (hkevane@pszjlaw.com); and (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2008 – Lockbox #35, Wilmington, DE 19801, Attn: Mark Kenney (Mark.Kenney@usdoj.gov). A party's failure to timely file or make an objection in accordance with this Order shall forever bar the assertion of any objection to the Sale, entry of the Sale Order, and/or consummation of the Sale with the Successful Bidder pursuant to the applicable purchase agreement, including, without limitation, the assumption and assignment of the Contracts to the Successful Bidder pursuant to the applicable purchase agreement, and shall be deemed to constitute such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto, including, without limitation such assumption and assignment.

## VII. Other Relief Granted

24. To the extent that any chapter 11 plan confirmed in this case or any order confirming any such plan or any other order in this case (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Order, the provisions of this Order shall control; *provided* that in the event of a conflict with any interim or final orders approving the Debtors' postpetition financing agreement and governing the Debtors' use of cash collateral, including the budget approved in connection therewith (in either case, the "DIP Order"), such interim or final DIP Order, as applicable, shall control. The Debtors' obligations under this Order, the provisions of this Order and the Bidding Procedures shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon the Debtors, and the reorganized or reconstituted Debtors, as the case may, after the effective date of a confirmed plan or plans in the Debtors' cases.

25. Nothing in this Order, the Stalking Horse Agreement (if any) or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

26. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

27. The Debtors are hereby authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

28. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

29. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Federal Rules of Bankruptcy Procedure or the Local Bankruptcy Rules to the contrary, and the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

30. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: May 4, 2017

*[signature]*
Honorable Laurie Selber Silverstein
United States Bankruptcy Judge

LEGAL\30197326\2